## IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2008-CA-00620-SCT

*VENNIT B. MATHIS, II*

*v.*

*ERA FRANCHISE SYSTEMS, INC., H. STUART*
*IRBY, MARK WARREN, REAL ESTATE*
*PROFESSIONALS OF CENTRAL MISSISSIPPI,*
*LLC AND REAL ESTATE PROFESSIONALS OF*
*THE PINE BELT, LLC*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/10/2008 |
| TRIAL JUDGE: | HON. ROBERT G. EVANS |
| COURT FROM WHICH APPEALED: | COVINGTON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | SAM STARNES THOMAS |
| | EDDIE JACOB ABDEEN |
| ATTORNEYS FOR APPELLEES: | JOSEPH ANTHONY SCLAFANI |
| | CHRISTOPHER A. SHAPLEY |
| | DENNIS L. HORN |
| | RICK D. PATT |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 11/12/2009 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE CARLSON, P.J., KITCHENS AND CHANDLER, JJ.**

**KITCHENS, JUSTICE, FOR THE COURT:**

¶1.     This is a case involving the attempt of a shareholder in a closely-held corporation to bring derivative claims as a direct action.  Finding that the trial judge did not err in dismissing the plaintiff's derivative claims for lack of standing, we affirm.

**Facts and Procedural History**

¶2. In 2000, Vennit B. Mathis, II, purchased a fifty percent equity interest in Real Estate Professionals, LLC ("REP"), a real estate brokerage firm. At the time of Mathis's acquisition, REP was a licensed ERA franchise. In connection with a franchise agreement between REP and ERA Franchise Systems, Inc., Mathis executed a personal guaranty covering REP's obligations to ERA.

¶3. The remaining fifty percent stake in the company belonged to Chip and Pamela Hill. According to Mathis's complaint, Chip Hill induced Mathis to lend large sums of money to Mr. Hill and REP, and also induced Mathis to pledge his personal assets as security for loans that Mr. Hill and REP had obtained from third parties.

¶4. Mathis alleged that in March 2002, the Hills transferred their fifty percent equity interest in REP to H. Stuart Irby but remained REP employees. According to Mathis, in an attempt to exclude him from the business, Chip Hill and Irby fraudulently transferred all of REP's assets to two other companies, Real Estate Professionals of the Pine Belt (REP-Pine Belt) and Real Estate Professionals of Central Mississippi, LLC (REP-Central). These entities were owned by Chip Hill, Irby, and Mark Warren, another REP employee. Mathis alleged that the Hills, Irby, and Warren induced REP's real estate agents to terminate their contracts with REP and become agents for REP-Central and/or REP-Pine Belt. He also alleged that REP-Central and REP-Pine Belt began utilizing the ERA trademark and thereby misappropriated REP's franchise rights.

2

¶5.   In May 2003, Mathis filed suit against Chip and Pamela Hill, Irby, Warren, REP-Central, REP-Pine Belt, and ERA in the Chancery Court of Covington County, alleging several causes of action and seeking various forms of recovery.  Recognizing that some of his claims were of a derivative nature and belonged to the corporation, Mathis sought to obtain an individual recovery to the exclusion of Irby, the other shareholder.

¶6.   All of the defendants, with the exception of the Hills, timely filed answers to Mathis's complaint.  ERA, Warren, and REP-Central all asserted affirmative defenses that Mathis lacked standing.  All of the defendants also disputed Mathis's claim that he owned a fifty percent equity interest in REP.  According to Irby, Irby had purchased Mathis's interest in the company for $250,000.  According to ERA, Warren, and REP-Pine Belt, Mathis had sold his interest in the company to the Hills.

¶7.   ERA also filed counterclaims against Mathis and cross-claims against the Hills and Irby. ERA alleged that Mathis had sold his interest to the Hills and that Mathis was disputing the validity of the sale in an attempt to obtain a favorable settlement of a separate business dispute with Chip Hill.  ERA also claimed that it was owed more than $300,000 by REP and that its members were personally liable for this amount.  In the event that the court determined that Mathis had not sold his interest in REP, ERA alleged that it had a cause of action against the Hills and Irby for fraud, negligent misrepresentation, and fraudulent conveyance.[1]

_____

[1]At the time Mathis filed his complaint, ERA had an action pending in the United States District Court for the Southern District of Mississippi against REP, REP-Central, the

3

¶8.    Irby and REP-Pine Belt also filed various counterclaims against Mathis arising from the alleged sale of Mathis's one-half interest in REP to Irby.  These claims included tortious interference with business relations, breach of contract, fraud, negligent misrepresentation, and trademark dilution and infringement.

¶9.    In November 2003, a dispute arose over jurisdiction.  The Hills had filed a Chapter 11 petition in the United States Bankruptcy Court for the Southern District of Mississippi.  ERA attempted to have the action removed, but the bankruptcy court declined to exercise jurisdiction and remanded the case to chancery court.  Following remand, ERA filed a motion to transfer the case to the Covington County Circuit Court.  The motion was denied, and this Court agreed to consider the issue on interlocutory appeal.  In June 2006, this Court held that jurisdiction was proper in the circuit court.  *ERA Franchise Systems, Inc. v. Mathis (Mathis I)*, 931 So. 2d 1278 (Miss. 2006).

¶10.   In July 2007, more than four years after Mathis commenced this litigation, ERA filed a Motion to Dismiss for Lack of Standing, pursuant to Rule 12(b)(6) of the Mississippi Rules of Civil Procedure, citing the derivative nature of Mathis's claims.  In due course, each of the appellees joined the motion.[2]  Mathis responded by arguing that, under *Derouen v.*

_____

Hills, Irby, and Mathis.  ERA sought to stay the state court action, but the federal suit was dismissed on August 29, 2003.

[2]The Hills are not parties to this appeal.  In October 2003, the Hills' attorney withdrew from the case, and by the time of the hearing on the motion to dismiss, they had not obtained new counsel.  Chip Hill appeared pro se at the motion hearing, but made no arguments.

*Murray*, 604 So. 2d 1086 (Miss. 1992), as a shareholder in a closely-held limited liability corporation, he was entitled to bring claims of a derivative nature in a direct action. On March 10, 2008, the trial judge held that Mathis "lack[ed] standing to pursue any claims against any Defendant that are in the nature of derivative claims belonging to Real Estate Professionals, LLC, and that all of [Mathis]'s claims against ERA are . . . derivative."

¶11.     From that judgment, Mathis timely filed this appeal, raising several points of error. Mathis's main argument is that he should be allowed to pursue derivative claims in a direct action and obtain recovery personally. In the alternative, should this Court find that Mathis lacked standing to pursue derivative claims, Mathis argues that the defendants waived their right to assert that Mathis lacked standing or that he should be allowed to amend his complaint to assert a derivative action. Finally, Mathis argues that not all of his claims against ERA are derivative in nature, and he should be allowed to pursue those claims that belong to him individually.

**I.**

¶12.     In general, "an action to redress injuries to a corporation, whether arising in contract or in tort cannot be maintained by a stockholder in his own name, but must be brought by the corporation because the action belongs to the corporation and not the individual stockholders whose rights are merely derivative." *Longanecker v. Diamondhead Country Club*, 760 So. 2d 764, 768 (Miss. 2000) (quoting *Bruno v. Southeastern Servs., Inc.*, 385 So. 2d 620, 622 (Miss. 1980)). However, Mathis argues that such of his claims as are derivative in nature may be brought in a direct action under the doctrine announced in *Derouen v. Murray*, 604

5

So. 2d 1086 (Miss. 1992). In **Derouen**, this Court determined that an action by one shareholder against another was a derivative action even though the plaintiff did not label it as such. **Id.** at 1090-91. Although the Court found that the action was derivative, the opinion stated in a footnote that it could have been brought as a direct action. **Id.** at 1091 n.2. According to **Derouen**,

> In the case of a closely-held corporation . . . the [trial] court in its discretion may treat an action raising derivative claims as a direct action, exempt it from those restrictions and defenses applicable only to derivative actions, and order an individual recovery, if it finds that to do so will not (i) unfairly expose the corporation or the defendants to a multiplicity of actions, (ii) materially prejudice the interests of the creditors of the corporation, or (iii) interfere with a fair distribution of the recovery among all interested parties.

**Id.** (quoting American Law Institute, *Principles of Corporate Governance: Analysis and Recommendations* § 7.01(d) (1992)).[3]

¶13.    Keeping in mind that this is a question left to the discretion of the trial judge, we find that the complexity of this case militates against application of the doctrine. A review of cases from other jurisdictions reveals that the doctrine is almost always employed in purely intracorporate disputes. *See, e.g.*, **Thomas v. Dickson**, 774, 301 S.E.2d 49, 51 (Ga. 1983); **Barth v. Barth**, 659 N.E.2d 559 (Ind. 1995); **Mynatt v. Collis**, 57 P.3d 513 (Kan. 2002);

---

[3]The defendants argue that this was mere dicta and that this Court has never explicitly adopted the rule. When the appeal was filed, this Court had not discussed the doctrine other than in **Mathis I**, 931 So. 2d at 1281-82. However, very recently, this Court has held, "Mississippi caselaw holds that in derivative suits involving closely held corporations, the trial court may award damages on an individual basis, provided certain safeguards are met." **Investor Res. Servs., Inc. v. Cato**, 15 So. 3d 412, (Miss. 2009) (citing **Derouen**, 604 So. 2d at 1091 n.2).

*Trieweiler v. Sears*, 689 N.W.2d 807 (Neb. 2004); *Schumacher v. Schumacher*, 469 N.W.2d 793 (N.D. 1991); *Durham v. Durham*, 871 A.2d 41, 46 (N.H. 2005); *Aurora Credit Servs. v. Liberty West*, 970 P.2d 1273 (Utah 1998). Although Mathis has filed suit against his current and former business partners, there are four defendants who are not and have never been owners or members of REP. Given the number of parties involved and the existence of several counterclaims and cross-claims, it is likely that a direct recovery would interfere with a fair distribution of the recovery or expose the corporation to a multiplicity of actions. Moreover, ERA has asserted that it is owed $300,000 from REP, making it a potential creditor that would be prejudiced if Mathis were to receive an individual recovery.

¶14. Although the trial judge did not explicitly address *Derouen* in the judgment, it was the central legal issue before the trial court. Considering the complexity of the case and the number of claims and parties involved, we find that the trial judge did not abuse his discretion in holding that Mathis could not pursue his derivative claims in a direct action.

**II.**

¶15. Mathis also argues that if he is not allowed to proceed directly on the derivative claims, he should be given leave to amend his complaint to assert a derivative action on behalf of REP. He argues that "had all of the Appellees timely pursued their 'lack of standing' defense through a motion to dismiss, Mathis could have cured and/or amended his complaint to assert a derivative action as an alternate theory of recovery." He also argues that he should not be required to make demand upon the LLC under Mississippi Code

7

Section 79-29-1102 because demand would have been futile and the appellees have waived their right to assert  lack of compliance with the demand statute as a defense.

¶16.    However, Mathis never presented these arguments to the trial court, and has never asked prior to this appeal to proceed derivatively.  Throughout the course of the proceedings, Mathis made clear that he was interested in pursuing a direct action only.  His sole argument in response to the motion to dismiss for lack of standing was that he could proceed directly under *Derouen*.  At oral argument, his attorney reiterated this position: "Mr. Mathis does not want there to be a recovery that goes to the corporation. . . . Mr. Mathis is not purporting to bring a derivative action. . . . It's a very narrow issue."  His attorney also stated to the trial court that if Mathis could not proceed directly, "Mr. Mathis is going to have to live with that."

¶17.    It is a fundamental rule of appellate procedure that, absent extraordinary circumstances, this Court will not consider issues raised for the first time on appeal.  *See e.g.*, *Anglin v. Gulf Guar. Life Ins. Co.*, 956 So. 2d 853, 864 (Miss. 2007) (quoting *Alexander v. Daniel*, 904 So. 2d 172, 183 (Miss. 2005)).  We cannot hold the trial court in error on an issue that was never put before it.  Because Mathis never requested to proceed derivatively, the trial court did not err in dismissing the derivative claims with prejudice.

**III.**

¶18.    Mathis's final contention is that, because not all of his claims are derivative in nature, he should be allowed to pursue the claims that belong to him individually.  The trial judge

8

held that all derivative claims were dismissed, but did not specify to which claims his ruling applied.

¶19.    There is little case law in Mississippi which addresses the difference between derivative and direct actions, but the general rule is that derivative actions seek recovery for injuries to the corporation. *Bruno*, 385 So. 2d at 622-23. The American Law Institute provides a helpful analysis in distinguishing between direct actions and derivative actions. Section 7.01 of the *Principles of Corporate Governance* states:

> (a) A derivative action may be brought in the name or right of a corporation by a holder . . . to redress an injury sustained by, or enforce a duty owed to, a corporation. An action in which the holder can prevail only by showing an injury or breach of duty to the corporation should be treated as a derivative action.
>
> (b) A direct action may be brought in the name and right of a holder to redress an injury sustained by, or enforce a duty owed to, the holder. An action in which the holder can prevail without showing an injury or breach of duty to the corporation should be treated as a direct action that may be maintained by the holder in an individual capacity.

A similar analysis can be found in Fletcher's *Cyclopedia of the Law of Corporations*:

> The action is derivative if the gravamen of the complaint is injury to the corporation, or to the whole body of its stock or property without any severance or distribution among individual shareholders, or if it seeks to recover assets for the corporation or to prevent the dissipation of its assets.

12B William Meade Fletcher, *Cyclopedia of the Law of Corporations* § 5911 (rev. ed. 2009). Thus, in determining whether the action belongs to the corporation or the individual, the focus of the inquiry is whether the corporation or the individual suffered injury.

¶20.    Considering these principles, we examine the claims alleged in Mathis's complaint:

9

*Count I*: Mathis sought a declaratory judgment (a) that he could pursue any derivative claims belonging to REP as a direct action and obtain individual recovery for these claims; (b) that ERA may not enforce any rights under the personal guaranty signed by Mathis; and (c) that Mathis owns fifty percent of REP-Central and REP-Pine Belt as corporate opportunities of REP.

*Count II*: The Hills, Warren, and Irby breached their fiduciary duties to Mathis and REP.

*Count III*: ERA, Warren, REP-Central, and REP-Pine Belt assisted the Hills and Irby in breaching their fiduciary duties to Mathis and REP.

*Count IV*: All the defendants violated their duties of care, loyalty, and fair dealing owed to both Mathis and REP, and all defendants usurped the corporate opportunities of REP.

*Count V*: All defendants tortiously interfered with the contractual relations of Mathis and/or REP.

*Count VI*: All defendants tortiously interfered with the prospective business advantage of Mathis and/or REP.

*Count VII*: All defendants conspired and/or aided and abetted in the wrongful actions alleged in the complaint.

*Count VIII*: Mathis sought an accounting of gains from all defendants stemming from the alleged wrongful conduct.

*Count IX*: All defendants hold any profits gained from their wrongful conduct in a constructive trust for Mathis. In addition, Chip Hill holds certain real property in a constructive trust for Mathis.

*Count X*: Chip Hill breached his agreement to transfer certain real property to Mathis, and Mathis is entitled to specific performance of these agreements.

*Count XI*: Chip Hill equitably converted some of these parcels of real property promised to Mathis, and Mathis is therefore entitled to compensatory and punitive damages as well as attorneys fees.

*Count XII*: ERA breached the franchise agreement with REP, and Mathis was entitled to all of REP's rights under the agreement, both individually and as a member of REP.

*Count XIII*: Chip Hill breached the loan agreements between Hill and Mathis.

*Count XIV*: Mathis agreed to pledge certificates of deposit as collateral for a loan from a third party to REP, and Hill and Irby breached their agreement with Mathis to repay this loan.

¶21. Having reviewed the complaint, we agree with the trial judge that all of the claims against ERA were derivative in nature. Although Mathis claims that his personal guaranty gives him the right to pursue a direct action against ERA, the guaranty was signed in connection with a franchise agreement between REP and ERA which Mathis signed as a member of REP, and the basis for his claim is ERA's breach of the franchise agreement.

¶22. The only claims asserted by Mathis which would not require a showing of injury to REP are those raised against Chip Hill, individually, including whether he breached an agreement to transfer certain real property to Mathis, and whether he breached loan agreements between Hill and Mathis. All other claims asserted by Mathis, however, are of such nature that any alleged harm suffered by Mathis would have been indirect, as a shareholder of REP, for which Mathis could make no recovery absent a showing of harm to REP. In other words, "the gravamen of the action is a wrong to the corporation." ***Bruno***, 385 So. 2d at 623.

## CONCLUSION

¶23. The trial judge did not err in declining to apply the ***Derouen*** doctrine and dismissing

11

Mathis's claims which were derivative in nature. Although Mathis now seeks to bring those claims on behalf of the corporation, he is barred from taking this position for the first time on appeal. Furthermore, the trial judge did not err in finding that all the claims against ERA were derivative in nature, and the only remaining claims are those asserted against Chip Hill for breach of private agreements between Hill and Mathis.

¶24.    **AFFIRMED.**

**WALLER, C.J., CARLSON AND GRAVES, P.JJ., DICKINSON, LAMAR, CHANDLER AND PIERCE, JJ., CONCUR.    RANDOLPH, J., NOT PARTICIPATING.**