# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2016-CA-00288-SCT

*THE MATTER OF THE ESTATE OF FRANKIE DON WARE, DECEASED: CAROLYN WARE, EXECUTRIX*

*v.*

*RICHARD WARE*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/28/2015 |
| TRIAL JUDGE: | HON. KENNETH M. BURNS |
| TRIAL COURT ATTORNEYS: | THOMAS A. WICKER |
| | CASEY LANGSTON LOTT |
| | REX F. SANDERSON |
| | DUSTIN COLT CHILDERS |
| COURT FROM WHICH APPEALED: | CHICKASAW COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | RHETT R. RUSSELL |
| | THOMAS A. WICKER |
| ATTORNEYS FOR APPELLEE: | CASEY LANGSTON LOTT |
| | DUSTIN COLT CHILDERS |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | REVERSED AND REMANDED - 03/01/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

## CONSOLIDATED WITH

## NO. 2016-CA-01589-SCT

*IN THE MATTER OF THE ESTATE OF FRANKIE DON WARE, DECEASED: CAROLYN WARE, AS EXECUTRIX OF THE ESTATE OF FRANKIE DON WARE*

*v.*

*RICHARD WARE*

DATE OF JUDGMENT:                 10/11/2016
TRIAL JUDGE:                      HON. KENNETH M. BURNS
COURT FROM WHICH APPEALED:        CHICKASAW COUNTY CHANCERY
                                  COURT
ATTORNEYS FOR APPELLANT:          RHETT R. RUSSELL
                                  THOMAS A. WICKER
ATTORNEYS FOR APPELLEE:           CASEY LANGSTON LOTT
                                  DUSTIN COLT CHILDERS
NATURE OF THE CASE:               CIVIL - OTHER
DISPOSITION:                      REVERSED AND REMANDED - 03/01/2018
MOTION FOR REHEARING FILED:
MANDATE ISSUED:


**BEFORE RANDOLPH, P.J., KING AND BEAM, JJ.**

**RANDOLPH, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     This case involves a dispute between a mother and son, Carolyn Ware ("Carolyn") and

Richard Ware ("Richard"), regarding the distribution of shares of stock of three closely held

corporations.  The shares were being held by the estate of the deceased husband/father,

Frankie Don Ware ("Frankie").  Frankie's will directed that the shares be distributed to a

testamentary trust.  The bylaws of the corporations (in which Frankie, Carolyn, and Richard

were the sole shareholders) required any outstanding shares of stock be offered to the

corporations prior to any transfer.  Carolyn, the executrix, filed a petition to close Frankie's

estate and to distribute Frankie's assets (including the shares) to the trust.  Richard filed an

objection to the closing of the estate, asserting the corporate bylaws of the three corporations.

Carolyn responded, arguing that Richard lacked standing to object.  The chancellor found for

Richard and required Carolyn to offer the shares back to each corporation prior to

2

transferring the shares to the trust. Carolyn subsequently appealed. The Court finds that Richard lacked standing to object to the closing of Frankie's estate.

## FACTS AND PROCEDURAL HISTORY

¶2. On April 8, 2011, Frankie passed away, leaving a last will and testament. Frankie appointed his wife, Carolyn, to serve as executrix of his will. The will created "The Frankie Ware Family Trust," which was to receive all of Frankie's estate's assets available for distribution. Carolyn, Richard, and his two sisters, Angela and Dana, were named trustees of the Frankie Ware Family Trust. The primary purpose of the trust was to provide the income and principal to Carolyn during her lifetime. His will provided that upon Carolyn's death, Richard and his sisters were to receive only income benefits from the trust, and that his grandchildren were to receive the income and/or principal for their medical and educational needs.

¶3. Included in the assets available for distribution to the family trust were outstanding shares of stock equal to 25% of three closely held corporations: Ware Milling, Inc.; Chickasaw Farm Services, Inc.; and Chickasaw Grain Transportation, Inc. Carolyn also owned 25% of the shares of each corporation in her own name. Richard owned the remaining 50% of the shares in each of the corporations.

¶4. Three years after Frankie's will was admitted to probate, Carolyn, as executrix, filed a Petition to close the estate and to distribute the assets according to Frankie's will. Richard filed an objection to the closing of the estate, asserting a section of each corporation's bylaws

3

that required shares to be offered back to the corporations prior to any transfer. Each of the corporation's bylaws contained the following provision:

> No shareholder shall have the right to sell, assign, pledge, encumber, transfer, or otherwise dispose of any of any [sic] of the shares of the corporation without first offering the shares for sale to the corporation at the annually established net asset value of such shares. Such offer shall be in writing, signed by the shareholder. The written offer shall be sent by registered or certified mail to the corporation at its principal executive office, and shall remain open for acceptance by the corporation for a period of 120 days from the date of mailing.

Richard argued that because Carolyn, as executrix, had not yet offered the shares to the corporations, the estate, as holder of the shares, could not be closed until the corporate restrictions were satisfied. Carolyn responded that Richard lacked standing as an individual to object on behalf of the corporations. Furthermore, Carolyn argued that the objection was an unreasonable restraint on the disposition of Frankie's will, and the restriction in the bylaws did not apply to testamentary dispositions.

¶5.    A hearing on Richard's objection was held on November 24, 2014. Richard and Carolyn testified about the share restriction of the corporations and its purpose, as well as Frankie's purpose in constructing his will. Richard testified that the intent of the share restriction was to limit stock ownership to the three original shareholders—Frankie, Carolyn, and Richard. Richard also offered an attorney, Albert Delgadillo, as an expert witness who opined that the word "transfer" in the share restriction applied to testamentary dispositions. Carolyn testified that her and her husband's intent with regard to the corporations was to ensure that the entire family benefitted from the businesses, and not just the original three

4

shareholders. Carolyn also requested that if the trial court required the shares be offered back to the corporations, that the court also order an appraisal and audit of each corporation.

¶6. The trial court subsequently entered an order appointing The Koerber Company ("Koerber") to conduct a forensic audit and valuation of each corporation. Koerber conducted an extensive study of each corporation, and determined the net asset value of a 25% equity interest, established as of April 8, 2011 (the date of Frankie's death), totaled $2,109,000[1] after discount. Koerber applied a 20% discount for "lack of control," and a 20% discount for "lack of marketability," to decrease the value of a 25% equity interest in each corporation.

¶7. Carolyn disagreed with Koerber's valuation, arguing that the value of a 25% equity interest in the corporations was worth more than fifteen million dollars. Richard also disagreed with Koerber's valuation, arguing that it was too high, as the value of Ware Milling's accounts receivable, inventory, and cash on hand essentially were calculated twice in Koerber's valuation.

¶8. The trial court concluded that Carolyn was required to offer the stocks to the corporations for purchase, citing Mississippi Code Section 79-4-6.27(b) (Rev. 2013), which provides that "[a] restriction on the transfer or registration of transfer of shares is valid and enforceable against the holder or a transferee of the holder . . . ," though the trial court did

---

[1]Koerber valued a 25% equity interest in Ware Milling, Inc., at $1,880,000, Chickasaw Farm Services, Inc., at $161,000, and Chickasaw Grain Transportation, Inc., at $68,000.

5

not address section (c) of the statute, which provides when restrictions are authorized.[2] The trial court then held that Carolyn was required to offer the shares to the corporation under *West v. West*, 88 So. 3d 735, 738 (Miss. 2012), in which this Court held "that statutory restrictions [under Section 79-4-6.27] on the transfer of restricted shares of corporate stock apply to both voluntary and involuntary transfers of the shares . . . ."

¶9.     The trial court accepted Koerber's valuation of the three corporations, including the discounts.  Finally, the trial court found that the corporations should pay the estate a reasonable rate of interest (three percent) from the date the estate was opened until the corporations exercised their option to purchase the stock.  The corporations never were made parties to this proceeding.

¶10.    Carolyn soon thereafter filed a motion to alter or amend the judgment of the trial court, arguing that the trial court lacked jurisdiction to establish the value of the corporations. The trial court denied Carolyn's motion.  Carolyn timely appealed to this Court.

¶11.    Notwithstanding the appeal to this Court, this dispute continued at the lower court. One month after Carolyn's appeal, Richard filed a motion for declaratory judgment in the trial court, requesting the court to declare "the rights, status and legal relations" between

---

[2] Mississippi Code Section 79-4-6.27(b) reads, in its entirety, as follows: "A restriction on the transfer or registration of transfer of shares is valid and enforceable against the holder or a transferee of the holder if the restriction is authorized by this section and its existence is noted conspicuously on the front or back of the certificate or is contained in the information statement required by § 79-4-6.26(b).  Unless so noted, a restriction is not enforceable against a person without knowledge of the restriction."  Section (c) continues: "A restriction on the transfer or registration of transfer of shares is authorized: (1) To maintain the corporation's status when it is dependent on the number or identity of its shareholders; (2) To preserve exemptions under federal or state securities law; (3) For any other reasonable purpose."

Richard, Carolyn, and the three corporations at issue, though the corporations were not made parties to these additional proceedings. Richard informed the court that Carolyn had yet to offer the shares back to the corporations, and that Carolyn intended to block any stock repurchase by the corporations by combining her own 25% interest with the estate's 25% interest, creating a deadlock. Richard argued that the right to repurchase the stock belonged to the corporations— not the shareholders. Therefore, Richard requested that the trial court enter an order declaring that the board of directors of the corporations had the voting power to decide whether to purchase the stock. In the alternative, Richard asked the trial court to prevent Carolyn from voting because it would be "inherently unfair to allow a shareholder with an obvious conflict of interest to vote . . . ."

¶12. Three months after Carolyn's initial appeal, Richard filed an additional motion relating that Carolyn still had not offered the stock to the corporations. Richard filed a "Motion to Direct Specific Act of a Disobedient Party, or in the alternative, to Set Supersedeas Bond." Richard requested the trial court to compel Carolyn to offer the stock for purchase by the corporations. In the alternative, Richard requested the trial court to set a supersedeas bond against Carolyn in the amount of 125% of the value of the shares.

¶13. The trial court issued an order addressing both Richard's motion for declaratory judgment, and his motion to compel action by a disobedient party. The trial court held that the board of directors, and not the shareholders, had authority to vote on whether to repurchase the stocks. In support, the trial court cited *Harper v. Harper*, 491 So. 2d 189, 195 (Miss. 1986), which provides that "[t]he management of a corporation is vested in its board

7

of directors and not the stockholders." Further, the trial court cited Mississippi Code Section 79-4-8.01 (Rev. 2013), which provides that "[a]ll corporate powers shall be exercised by or under the authority of the board of directors of the corporation . . . ."

¶14. In addressing Richard's motion to compel action by a disobedient party, the trial court cited Mississippi Code Section 11-51-43 (Rev. 2015), which provides:

> In any case of an appeal to the Supreme Court, where no special provision is made by law for a supersedeas of the judgment or decree appealed from, or for the bond to be given in such case, a supersedeas may be allowed by the court rendering the judgment or decree appealed from . . . with such sureties as said court or judge may direct in the order for a supersedeas.

Accordingly, the trial court held that Carolyn should be required to post a supersedeas bond in the amount of $250,000, which the trial court held was sufficient to protect Richard's interests. Carolyn posted the bond in the set amount and subsequently appealed the trial court's second ruling.

## ISSUES

¶15. Carolyn raises seven issues on appeal:

(1) Whether Richard had standing to object to the closing of the estate on behalf of the corporations.

(2) Whether the stock-transfer restriction applies to testamentary dispositions.

(3) Whether Richard's objection to the closing of the estate was timely.

(4) Whether the chancery court erred by appointing the Koerber Company's business valuations.

(5) Whether the chancery court erred by accepting the Koerber Company's twenty percent discount on the value of the stocks for "lack of control and marketability."

8

(6)   Whether the chancery court erred in awarding the estate three percent interest on the value of the shares.

(7)   Whether the chancery court erred by holding that the Board of Directors, and not the shareholders, may vote to purchase the stock.

Carolyn's first argument regarding Richard's standing is case-dispositive.

**ANALYSIS**

## I.      Standing

¶16.   Carolyn argues that Richard's objection to the closing of the estate is a shareholder derivative action, and therefore Richard lacked standing to object. Despite Carolyn's raising this issue throughout the proceedings, the trial court declined to address Richard's standing.

¶17.   "Standing is a jurisdictional issue." *Hotboxxx, LLC v. City of Gulfport*, 154 So. 3d 21, 27 (Miss. 2015) (citations omitted). Therefore, "it may be raised by the Court *sua sponte* or by any party at any time, and the standard of review is *de novo*." *Id.*

¶18.   Carolyn cites *Bruno v. Southeastern Services, Inc*., 385 So. 2d 620, 622 (Miss. 1980), in which this Court adopted the rule

> that an action to redress injuries to a corporation, whether arising in contract or in tort cannot be maintained by a stockholder in his own name, but must be brought by the corporation because the action belongs to the corporation and not the individual stockholders whose rights are merely derivative. The rule applies even though the complaining stockholder owns all or substantially all of the stock of the corporation.

¶19.   Richard argues that his claim is not a shareholder derivative claim, but rather, an objection to the administration of the estate. Richard argues that because he is named a trustee of the trust created by Frankie's will, he has standing to object to the closing of Frankie's estate. Thus, Richard argues that Carolyn's standing argument, as it applies to

9

shareholder derivative actions, is inapplicable.  Notably, Richard cites no authority for his position that his title of trustee confers upon him standing to object to the administration of an estate.  Regardless, his argument is without merit.  Richard is attempting to prevent assets from being distributed *to* the trust.  "A trustee shall take reasonable steps to *enforce claims of the trust* and to *defend claims against the trust*."  Miss. Code Ann. § 91-8-811(a) (Rev. 2013) (emphasis added).  Richard's title of trustee alone is insufficient to confer standing unless he is enforcing claims on behalf of the Frankie Ware Family Trust or is defending claims against the family trust. *Id.*

¶20.    In order to address standing, the Court must determine whether Richard "had the right to participate in this cause of action."  ***City of Picayune v. Southern Reg'l Corp.***, 916 So. 2d 510, 519-520 (Miss. 2005).  "Fundamental to this review" is what body of law applies to the dispute. ***Id.***  Accordingly, whether Richard's action is indeed a shareholder derivative action will determine what law applies, and in turn, determine Richard's standing.

¶21.    "[I]n determining whether the action belongs to the corporation or the individual, the focus of the inquiry is whether the corporation or the individual suffered injury."  ***Scafidi v. Hille***, 180 So. 3d 634, 647 (Miss. 2015) (quoting ***Mathis v. ERA Franchise Sys., Inc.***, 25 So. 3d 298, 303 (Miss. 2009)).  "The action is derivative if the gravamen of the complaint is injury to the corporation, or to the whole body of its stock or property without any severance or distribution among individual shareholders, or if it seeks to recover assets for the corporation or to prevent the dissipation of its assets." ***Id.***  Richard's objection to the closing of Frankie's estate is, in reality, a shareholder derivative claim.  Richard was seeking

solely to enforce a putative corporate right. As such, the law applying to shareholder derivative actions must apply. *See* **City of Picayune**, 916 So. 2d at 519-520 (holding that "different standing requirements are accorded to different areas of the law," and finding that because corporate law applied to the action, citizens did not have standing to challenge actions by a corporation).

¶22.    In Mississippi, a shareholder may not institute a derivative suit unless certain statutory conditions are met. 3 *Miss. Practice Encyclopedia of Miss. Law* § 22:210 (2d ed. 2017). Mississippi Code Section 79-4-7.41(1) (Rev. 2013) provides that a shareholder may not commence a derivative suit unless he or she was a shareholder at the time of the act or omission in question. Mississippi Code Section 79-4-7.41(2) requires that the shareholder fairly and adequately represent the interests of the corporation. Furthermore, Mississippi Code Section 79-4-7.42 (Rev. 2013) requires the complaining shareholder to make a written demand upon the corporation or appropriate officers prior to commencing the proceeding, and section two of that statute requires ninety days to elapse after the written notice, unless the corporation earlier rejects the demand, or unless irreparable injury to the corporation would result by waiting for the ninety-day period to elapse. Finally, our caselaw requires that the corporation is made a party to the derivative action. *See* **Bruno**, 385 So. 2d at 622 ("The corporation is an indispensable party" to a shareholder derivative action); *see also* **Fairchild v. Keyes**, 448 So. 2d 292, 294 (Miss. 1984) ([T]he corporation is an indispensable party to a suit brought to protect its interest . . . .").

11

¶23.    "The rationale for these procedural prerequisites has to do with the corporation's status as a creature of the State." 3 *Miss. Practice Encyclopedia Miss. Law* § 22:210 (2d ed. 2017). "Since the corporation is a separate entity, the shareholder has no legal interest in any of its property." *Id.* These conditions "avoid multiple lawsuits, preserve creditors' rights since any recovery will belong to the corporation, and provide for any recovery to benefit all shareholders." *Id.*

¶24.    Richard failed to satisfy the statutory conditions required of shareholder derivative actions. Notwithstanding, Richard argues that, even if his action is considered a shareholder derivative action, the chancery court has discretion to disregard the procedural prerequisites and treat the claim as a direct action if it makes certain findings under the ***Derouen*** doctrine. ***Derouen v. Murray***, 604 So. 2d 1086, 1091 n.2 (Miss. 1992). The trial court declined to address the question of whether Richard's action was a shareholder derivative action, and never made any findings under ***Derouen***. In ***Derouen***, this Court did not overrule ***Bruno***, but stated in a footnote that

> [i]n the case of a closely held corporation . . . , the [chancery] court in its discretion may treat an action raising derivative claims as a direct action, exempt it from those restrictions and defenses applicable only to derivative actions, and order individual recovery, if it finds that to do so will not (i) unfairly expose the corporation or the defendants to a multiplicity of actions, (ii) materially prejudice the interests of creditors of the corporation, or (iii) interfere with a fair distribution of the recovery among all interested persons.

***Derouen***, 385 So. 2d at 622. This Court later interpreted the ***Derouen*** doctrine to hold "that in derivative suits involving closely held corporations, the trial court may award damages on an individual basis, provided certain safeguards are met." ***Investor Res. Servs., Inc. v. Cato***,

15 So. 3d 412, 424 (Miss. 2009). Indeed, the facts of *Derouen* involved a shareholder seeking individual recovery for his fifty-percent equity interest in proceeds from the business. *Derouen*, 604 So. 2d at 1089-90.

¶25. Here, Richard is not seeking individual recovery or individual damages. Rather, he has brought an action to enforce corporate bylaws. The *Derouen* doctrine does not apply because Richard does not seek individual recovery, but rather seeks to redress alleged wrongs to the three corporations.

¶26. The holding in *Bruno* applies in this case. Richard lacked standing to bring suit because the right belongs to the three corporations. It is of no consequence that Richard owns half of the shares of stock, as *Bruno* explicitly applies to closely held corporations, where "the complaining stockholder owns all or substantially all of the stock of the corporation." *Bruno*, 385 So. 2d at 622. Accordingly, Richard lacked standing under *Bruno* to assert a claim individually on behalf of the corporations.

## CONCLUSION

¶27. Richard lacked standing to bring suit on behalf of the three corporations, because the injury for which he seeks relief, and the gravamen of this matter, pertains to the corporations only. Therefore, the Court reverses and remands the trial court's judgment, and subsequent orders related to that judgment, for proceedings consistent with this opinion.

¶28. **REVERSED AND REMANDED.**

**WALLER, C.J., KITCHENS, P.J., KING, COLEMAN, MAXWELL, BEAM, CHAMBERLIN AND ISHEE, JJ., CONCUR.**

13