# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2014-CA-01774-SCT

*PASCAGOULA- GAUTIER SCHOOL DISTRICT,
FORMERLY KNOWN AS PASCAGOULA SCHOOL
DISTRICT AND CITY OF PASCAGOULA,
MISSISSIPPI*

*v.*

*BOARD OF SUPERVISORS OF JACKSON
COUNTY, MISSISSIPPI*

DATE OF JUDGMENT:             11/19/2014
TRIAL JUDGE:                  HON. SAMAC S. RICHARDSON
COURT FROM WHICH APPEALED:    JACKSON COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANTS:     WILLIAM E. WHITFIELD, III
                              KIMBERLY DAWN SAUCIER ROSETTI
                              EDDIE C. WILLIAMS
ATTORNEY FOR APPELLEE:        JACKYE C. BERTUCCI
NATURE OF THE CASE:           CIVIL - OTHER
DISPOSITION:                  AFFIRMED IN PART; REVERSED IN PART
                              AND REMANDED  - 10/20/2016
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE DICKINSON, P.J., KITCHENS AND KING, JJ.**

**KING, JUSTICE, FOR THE COURT:**

¶1.     The Pascagoula-Gautier School District and the City of Pascagoula took issue with

the Jackson County Board of Supervisors' approval of the Tax Assessor's methodology in

assessing taxes on Chevron's leasehold interest in property it leased from Jackson County.

After several years of litigation, and after the trial court had denied two motions to dismiss

for lack of standing, the trial court sua sponte reversed course and granted the second motion to dismiss for lack of standing. It reasoned that the School District and City lacked standing because Mississippi Code Section 11-51-77 does not specifically grant them standing. Because the School District and the City need not show a specific statute authorizing standing, and because they have otherwise demonstrated standing, we reverse the trial court judgment on this issue. As subsidiary matters, the School District and the City appeal the trial court's orders granting the Board's demand for jury trial under Section 11-51-77 and denying the PGSD's motion to join Chevron as a party. We affirm the trial court's decision to grant the Board's demand for a jury trial and reverse the trial court's order declining to join Chevron as a party.

### FACTS AND PROCEDURAL HISTORY

¶2. In 1982, Jackson County and Chevron executed a lease allowing Chevron to lease property owned by Jackson County.[1] Because the property itself was owned by Jackson County and was thus not taxable, Jackson County and Chevron entered into in lieu of tax agreements. The in lieu of tax agreements provided that, so long as the property or Chevron's interest in the property were not subject to taxation, Chevron would pay an amount of money in lieu of taxes. Chevron was to pay

> An amount equal to the aggregate of (1) an amount equal to the state and county ad valorem taxes which otherwise would be lawfully levied by the County, and which otherwise would be due by the Company, on property of

---

[1] Bonds were issued for two projects on this land – the parties sometimes refer to them as the Pollution Control Bonds and the Port Bonds. Each project had separate in lieu of tax agreements, but the in lieu of agreements were essentially the same and the parties appear to treat the two projects as one property in this case.

like kind and character as the Pollution Control Project and the Additional Pollution Control Project [and the Port Project], and (2) an amount equal to the annual municipal separate school district ad valorem taxes which otherwise would be lawfully levied by the City of Pascagoula, and which otherwise would be due by the Company, on property of like kind and character as the Pollution Control Project and the Additional Pollution Control Project [and the Port Project][.]

The Chevron property is located in the Pascagoula-Gautier School District (formerly the Pascagoula School District).[2] However, it is *not* located within the boundaries of the City of Pascagoula. Since the property is in the County, but the City is the taxing authority for the school district in which the property is located, the County assesses and collects the taxes for the City per interlocal agreement. The Board of Supervisors' resolution on the in lieu of agreements provided that the monies received in lieu of the school district ad valorem taxes would "be divided by the County among all of the School Districts in Jackson County based upon the average daily attendance of the number of pupils attending the public schools in Jackson County." Further, in 2007, the Legislature passed a law that provided that revenue from school district ad valorem taxes levied on properties such as Chevron's property shall be distributed to all the public school districts in the county in which the property is located. *See* **Pascagoula School Dist. v. Tucker**, 91 So. 3d 598, 600-01 (Miss. 2012). The Pascagoula School District filed suit, arguing that this statute was unconstitutional, as the constitution provides that a school district may levy a tax to maintain its schools, not its schools and several others. *Id.* at 602-03. This Court found the school district's argument persuasive and declared the statute unconstitutional. *Id.* at 606-07. This mandated that all

[2]The school district's name changed from the Pascagoula School District to the Pascagoula-Gautier School District on February 9, 2015.

3

of the school district ad valorem funds from the Chevron property go to the Pascagoula School District. ***Id.***

¶3.    During the pendency of this litigation, the Pascagoula School District (which hereinafter will be referred to by its current name, the Pascagoula-Gautier School District, or PGSD) discovered that the Chevron property was still on the in lieu of tax rolls nearly twenty years after the lease was signed, instead of the regular tax rolls, as required by law. *See* Miss. Const. art. 7, § 182 (providing that certain tax exemptions may not exceed ten years).  In 2010, the PGSD began requesting that Jackson County place the Chevron Leases on the tax rolls.  Also in 2010, while the Chevron Leases were still on the in lieu of rolls, the property was assessed for the in lieu of rolls at a true value of $58,706,097, which gave an assessed value of $17,611,829, which, at the school district's 48.3900 millage rate, led to $852,236.41 in taxes collected for the school district.  Finally, in October 2011, Jackson County added the Chevron Leases to the tax rolls.  The 2011 assessed value was determined to be $8,422,716, less than half of the assessed value during the prior year.[3]  During the time the appraisal was being done and was awaiting approval, the PGSD communicated with the Jackson County Board of Supervisors (hereinafter Board) and the Jackson County Tax Assessor in an attempt to understand how the assessment was calculated.

¶4.    After the Board approved the assessment in October of 2011, the PGSD and City of Pascagoula (hereinafter City) filed notices of appeal and a bill of exceptions in the Circuit Court of Jackson County.  The Bill of Exceptions alleged that Chevron signed an in lieu of

---

[3]The tax assessor asserts that it valued the leasehold at 50% of the land's value in fee simple.

agreement that Chevron would pay a fee equal to the ad valorem taxes it otherwise would owe on the leasehold value of the property, that the 2011 "50% rule" valuation was not based upon legal authority or an official appraisal publication, but was simply used as a "rule of thumb" by the tax assessor's office, that the assessment did not take into account the factors generally used in assessing a leasehold interest, that the assessment is not based upon substantial evidence, that the assessment does not reflect the true value of the leasehold, that the assessment is arbitrary and capricious, and that the assessment is in violation of certain statutory and constitutional provisions. The City moved to consolidate the cases filed by itself and the PGSD, and the motion was granted. On January 30, 2012, the Board moved the Court to dismiss the case for lack of standing. On April 3, 2012, the trial court denied the motion to dismiss.[4] The PGSD then moved for a trial de novo. The circuit court found that the motion "at this time" should be denied and the case remanded for the Board to conduct a hearing on the issue, so that a complete record could be submitted to the circuit court.

¶5.     In the meantime, the situation was repeating itself with the 2012 assessment of the Chevron taxes, with the assessment being approximately half of what it was when the land was on the in lieu rolls. On August 27, 2012, the Board held a hearing on this 2012 assessment and objection, culminating with the Board denying the objection, finding that the PGSD and the City lacked standing, and that their claims also were without merit. Chevron participated in this hearing, arguing that it was entitled to notice, or at least should have been

_____

[4]The Board filed a Petition for Permission for Interlocutory Appeal with this Court, which it then sought to have voluntarily dismissed. The petition was so dismissed.

put on the pleadings. The PGSD and the City appealed this determination to the circuit court. The situation essentially repeated itself with the 2013 and 2014 assessments, and the appeals from each year's assessment all were consolidated by the circuit court.

¶6.     On September 18, 2012, the Board held a hearing on the 2011 objection. Chevron participated. The Board denied the objection, finding that the PGSD and the City failed to follow the proper procedures to object and that their arguments also were without merit. The case went back to circuit court, where, as mentioned, it eventually was consolidated with the 2012 case, and subsequently, with the 2013 and 2014 cases.

¶7.     On January 18, 2013, the circuit judges in the district all recused themselves and requested that this Court appoint a special judge to hear the matter. This Court appointed Judge Samac Richardson. On April 8, 2013, the Board filed a second motion to dismiss for lack of standing that was virtually identical to the motion filed in 2012. Chevron joined the motion to dismiss. On May 20, 2013, the circuit court denied the 2013 motion to dismiss for lack of standing. On the same day, the trial court granted the PGSD's motion for a trial de novo pursuant to Mississippi Code Section 11-51-77. Both the Board and Chevron separately petitioned this Court for permission to appeal from the interlocutory order denying the motion to dismiss for lack of standing, and this Court denied both petitions.

¶8.     During the continuation of the cases, Chevron fully participated in the case, filing pleadings and motions, making arguments, and never entering any sort of "special" appearance or limiting its participation, yet it never filed a motion to intervene. During this time, Chevron participated in the following ways:

6

1. Participating in the hearing on the 2012 objection, including a statement that it "should" be on the pleadings on the objection.

2. Participating in the hearing on the 2011 objection.

3. Filing a joinder in the Board's Motion to Dismiss Appeal pursuant to Section 11-51-75.

4. Filing a joinder in the Board's Objection to Motion to Consolidate Cases.

5. Filing a joinder in the Board's Motion to Strike Exhibits.

6. Filing a joinder in the Board's Certificate of Deficiencies in Amended and Supplemental Bill of Exceptions.

7. Filing a Motion to Affirm Resolution of the Board of Supervisors of Jackson County, Mississippi, Denying the Objection to Assessment Filed by City of Pascagoula and Pascagoula School District as to Certain Leasehold Interests Held by Chevron U.S.A. Inc. and Making Findings of Fact and Conclusions of Law. The Board ultimately filed a joinder in this motion.

8. Noticing a hearing for the above motion.

9. Filing a Reply to the PGSD's Response to the above motion.

10. Filing a Response to Supplementation to Response to the above motion.

11. Filing a joinder in the Board's 2013 Motion to Dismiss for Lack of Standing.

12. Filing a Reply to Response in Opposition to the Board's Motion to Dismiss for Lack of Standing.

13. Filing a joinder in the Board's Reply to the Response in Opposition to the Motion to Dismiss for Lack of Standing.

14. Filing a re-notice of hearing for its Motion to Affirm the Resolution of the Board.

15. Filing a second re-notice of hearing for the above motion.

16. Filing a joinder in the Board's Response to Motion to Consolidate.

17. Participating in the May 6, 2013 hearing on standing. This included a statement that "Chevron is here because we kind of had to force ourselves into a case where people are trying to raise our taxes. And it's the process that is objectionable, and not the fact that we're paying taxes[.]"

¶9.     Meanwhile, the proceedings were moving along with trial preparations. The PGSD served Chevron with discovery. Chevron responded by, for the first time, arguing that it was not required to respond to discovery because it was not a party to the appeal. The PGSD moved to compel Chevron's discovery responses, and Chevron continued to respond that it was not a party. At the hearing on this issue, the court indicated that the proper procedures had not been followed, and that Chevron indeed was not a party. The PGSD then filed a Motion to Join Chevron U.S.A. Inc. as a party in the matter, pursuant to Rule 19 and/or Rule 20. The court denied PGSD's motion.

¶10.    Concurrently, the parties were arguing over whether to conduct a jury trial or a bench trial. The Board made a Demand for Jury Trial, which the PGSD and City opposed. After a hearing on the matter, the circuit court granted the Board's demand for a jury trial.

¶11.    On November 19, 2014, the circuit court sua sponte reconsidered its previous ruling(s) on standing. It granted the Board's motion to dismiss for lack of standing, finding that Section 11-51-77 "allows only the taxpayer who retains an ownership or possessory interest in the subject property to appeal the assessment." It noted that "[a]lthough, not specifically prohibited by the statute, it just seems unfair to allow one person to contest the tax assessment of another. I would think that an aggrieved person would typically be one who was over assessed rather than one who was under assessed or a third party contesting the

under assessment of another." The instant appeal resulted. The PGSD and City appeal the motion to dismiss for lack of standing, as well as the order granting a jury trial and the order denying their motion to join Chevron as a party.

## ANALYSIS

### A. Standing

¶12. This Court applies a de novo standard of review to its review of standing. *SASS Muni-V, LLC v. DeSoto County*, 170 So. 3d 441, 445 (Miss. 2015).

¶13. Mississippi has "quite liberal" standing requirements, especially as compared to the standing requirements set out in Article III of the United States Constitution. *Id.* at 445-46. To have standing, a party must: 1) "assert a colorable interest in the subject matter of the litigation"; *or* 2) "experience an adverse effect from the conduct of the defendant"; *or* 3) be "otherwise authorized by law" to sue. *Id.* at 446 (internal quotations omitted). "An interest is deemed colorable if it appears to be true, valid, or right[,]" and the entitlement to assert a claim must be grounded in some legal right recognized by either statute or common law. *Id.* (internal quotations omitted). Furthermore, to establish standing based on experiencing an adverse effect, that adverse effect that is "experienced must be different from the adverse effect experienced by the general public." *Id.* (internal quotations omitted). Additionally, "this Court has been more permissive in granting standing to parties who seek review of governmental actions." *State v. Quitman County*, 807 So. 2d 401, 405 (Miss. 2001) (internal quotations omitted). Because PGSD clearly experienced an adverse impact different from

9

the effect experienced by the general public, it has standing, and we decline to address whether a colorable interest exists or whether PGSD otherwise is authorized by law to sue.[5]

¶14.    The PGSD and the City argue that, as the direct recipient of the revenue from the taxes collected and the taxing authority, the PGSD and City experience an adverse effect different than that of the general public.  They also note that the School District has a statutory duty to secure proper funding.  The Board argues that the PGSD and City do not suffer any adverse effect that is different from that of the general public.  It argues that any adverse effect is the same as experienced by any parent with a child in the school district.  It points to cases in other states in which those courts found that a third party did not have standing to challenge a tax assessment.[6]  It also argues that finding that the PGSD and the City

_____

[5] In arguing whether the PGSD has standing because it otherwise is authorized by law to sue, the PGSD and the City argue that Section 11-51-77 allows them to appeal the tax assessment on the Chevron property.  The Board argues that Section 11-51-77 does not authorize the PGSD to appeal the tax assessment, and that, while it allows the City to appeal, the City did not do so through the appropriate procedures.  To be clear, we do *not* address whether the PGSD and the City followed the appropriate procedures.  The Board does *not* argue simply that the suit should be dismissed for procedural defects.  Rather, it argues that any alleged procedural defects strip the PGSD and the City of *standing*.  But standing is a jurisdictional matter and cannot be eliminated by a mere failure to follow a procedure.  Whether the case should be dismissed for procedural defects is an entirely different issue, not properly raised on appeal.

[6]Those cases are distinguishable.  *See* ***City of Richmond Heights v. Board of Equalization of St. Louis County***, 586 S.W.2d 338 (Mo. 1979) (Missouri law provided that political subdivisions of the state may not appeal underassessments unless they have express statutory authorization; no such statutory authorization existed); ***Dallas County Bd. of Educ. v. Henry***, 507 So. 2d 911 (Ala. 1987) (this case did not examine standing at all, but rather the rules of civil procedure; taxpayers brought class action challenging the methodology used to value land for ad valorem tax purposes, and the Dallas County Board of Education moved to intervene as of right pursuant to the Alabama Rules of Civil Procedure that provided that an applicant with an "interest relating to the property or transaction" that is the subject of the action and when the disposition of the action may impede the party's ability

experience an adverse effect would open the floodgates of litigation, because any taxpayer could challenge any other taxpayer's assessment.

¶15.    In *City of Belmont v. Mississippi State Tax Commission*, several municipalities sued the tax commission, arguing that the State was not following the law in its diversion of state sales tax funds to the municipalities.  850 So. 2d 289 (Miss. 2003).  The trial court in *City of Belmont* determined that no statute or constitutional provision specifically granted authority to the municipalities to sue, thus, the municipalities lacked standing.  *Id.* at 296. The trial court also found that the State Auditor had the exclusive authority to bring the sort of action brought in the case.  *Id.*  Similarly in this case, the trial court found that Section 11-51-77 did not authorize the PGSD to bring suit, and that the district attorney, county attorney, and/or Attorney General had the exclusive authority to bring such a suit on behalf of the City under the statute.[7]  The trial court did not determine whether the PGSD and the City had a

to protect that interest; Board claimed that if the taxpayers prevailed, they may be required to refund taxes; Court held that the "interest" of the Board under the rules of civil procedure amounted to no more than a "concern" for the outcome of the litigation that was shared by all citizens of the county and all governmental agencies that received taxes).

[7]The relevant portion of Section 11-51-77 referring to a municipality being aggrieved by a decision of the Board of Supervisors states:

> The county attorney, the district attorney, or the Attorney General, if the state, county or municipality be aggrieved by a decision of the board of supervisors or the municipal authorities of a city, town, or village as to the assessment of taxes, may, within twenty days after the adjournment of the meeting at which such decision is made, or within twenty days after the adjournment of the meeting at which the assessment rolls are corrected in accordance with the instructions of the state tax commission, or within twenty days after the adjournment of the meeting of the board of supervisors at which the approval of the roll by the state tax commission is entered, appeal to the circuit court of the county in like manner as in the case of any person aggrieved as

colorable interest in the subject matter of the litigation or experienced an adverse effect. The Court in *City of Belmont* found that "[t]he Municipalities clearly have a colorable interest in the subject matter of this litigation concerning statutorily prescribed sales tax diversions." *Id.* at 297. The Municipalities had argued that their standing was based on their colorable interest deriving from their status as *direct* beneficiaries of the sales tax diversion statutes and as the ones experiencing the adverse effects of the State's actions. *Id.* at 295. This Court also found that the trial court erred in finding that the State Auditor had the exclusive authority to bring these suits, as, while the statute gave the State Auditor the power to bring the suits, it did not give the Auditor *exclusive* authority. *Id.* at 297.

¶16.    While *City of Belmont* found the issue of colorable interest dispositive, this case is similar to *City of Belmont* in that the PGSD is the *direct* beneficiary of the school district taxes assessed on the property. The City is the taxing authority for the school district taxes on the property. Moreover, both the PGSD and the City have statutory duties associated with the taxes. "Each school board *shall* submit to the levying authority for the school district a certified copy of an order adopted by the school board requesting an ad valorem tax effort in dollars for the support of the school district." Miss. Code Ann. § 37-57-104(1) (Rev. 2014) (emphasis added). The copy of the order must be submitted at the same time as the copies of the school district's budget are filed with the levying authority, pursuant to statutory

---

hereinbefore provided, except no bond shall be required, and such appeal may be otherwise governed by the provisions of this section.

Miss. Code Ann. § 11-51-77 (Rev. 2012).

law. *Id.* "Upon receipt of the school board's order requesting the ad valorem tax effort in dollars, the levying authority *shall* determine the millage rate necessary to generate funds equal to the dollar amount requested by the school board." *Id.* (emphasis added). Moreover, "[t]he governing authorities of the municipalities *shall* levy and collect all taxes for and behalf of all school districts which were designated as municipal separate school districts prior to July 1, 1986." Miss. Code Ann. § 37-57-1(1)(a) (emphasis added).

¶17.    The average taxpayer in the district, or the average parent of a child in the school district, is neither the *direct* beneficiary of ad valorem taxes, nor is he or she under any statutory or fiduciary duty to levy taxes or to budget and pay for the education of the students in the district. The PGSD and the City clearly experience an adverse effect that is different from that of the average parent of a child in the school district. Their funding is reduced by any allegedly improperly low tax assessment, the City must set a higher millage rate for the rest of its taxpayers in order to meet the budget; plus, the school district must incur certain costs encountered in raising millage rates. *See* Miss. Code Ann. § 37-57-104 (Rev. 2014). The PGSD and the City both experience an adverse effect from the conduct of the Board, and that adverse effect is different from that experienced by the general public. The PGSD and the Board consequently have standing to sue the Board in this matter.

***B. Jury Trial***

¶18.    The PGSD and City argue that the trial court erred in granting the Board's demand for a jury trial under Section 11-51-77, which provides that any appeal of a tax assessment shall be tried anew in circuit court. This Court affirms the decision of the trial court. *See*

13

*Riverboat Corp. of Mississippi v. Harrison Cty. Bd. of Supervisors*, 198 So. 3d 289 (Miss. 2016).

### *C. Joinder of Chevron as a Party*

¶19.    This Court reviews issues of joinder for abuse of discretion. ***Riverbend Utils., Inc. v. Brennan***, 68 So. 3d 59, 61 (Miss. 2011).

¶20.    The PGSD and the City argue that the trial court abused its discretion by refusing to order Chevron's joinder under Rules 19 and 20 of the Mississippi Rules of Civil Procedure. They further argue that Chevron waived any right to object to being joined due to its unfettered participation in the case. The Board argues that the PGSD and the City have taken inconsistent positions with regard to Chevron, essentially admitting that Chevron should not be joined, and further arguing that the trial court's decision was proper under Rules 19 and 20.

¶21.    A majority of this Court agrees that Chevron should have been joined as a party, but the majority has differing views as to the reason Chevron should have been joined. Some members of the majority believe that Chevron should be joined as a party under Rule 19.[8]

---

[8]Mississippi Rule of Civil Procedure 19 states:

(a) Persons to Be Joined if Feasible. A person who is subject to the jurisdiction of the court shall be joined as a party in the action if:

(1) in his absence complete relief cannot be accorded among those already parties, or

(2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double,

Other members of the majority believe that Chevron, through its participation in the case, waived the right to object to its joinder as a party.[9] Either way, a majority agrees that the trial

> multiple, or otherwise inconsistent obligations by reason of his claimed interest.

> Subsection (2) requires Chevron's joinder as a necessary party. Chevron has claimed an interest in the subject matter of this litigation, and the failure to join Chevron as a party would leave both the District and tax assessor at a substantial risk of facing double litigation. The relief at issue here is the tax assessor's valuation of Chevron's property, and the increased tax revenue the District believes it will receive with an appropriate valuation. Both before the board of supervisors and in the circuit court, Chevron has participated in this litigation, specifically arguing that, as the taxpayer who would be subjected to paying increased taxes if the District prevails, it was entitled to notice and an opportunity to protect its interest in this litigation. Though Chevron has never formally moved to intervene, certainly it has asserted "an interest in the subject matter of the litigation."

> The Advisory Committee Note to Rule 19 explains that the rule is intended to avoid multiple litigation and provide complete relief through a single judicial proceeding:

>> There is no precise formula for determining whether a particular nonparty must be joined under Rule 19(b). The decision has to be made in terms of the general policies of avoiding multiple litigation, providing the parties with complete and effective relief in a single action, and protecting the absent persons from the possible prejudicial effect of deciding the case without them.

This case presents exactly that concern.

> Chevron's absence creates a substantial risk of double litigation. If the District prevails in this litigation, Chevron's tax burden for the subject property will be increased. It takes no crystal ball to discern a substantial risk that Chevron, if not a party to this litigation, will initiate its own litigation to challenge its increased tax burden.

[9]"Waiver is voluntary surrender or relinquishment of some known right." *Sentinel Indus. Contracting Corp. v. Kimmins Indus. Serv. Corp.*, 743 So. 2d 954, 964 (Miss. 1999) (internal quotations omitted). This includes "conduct which implies the voluntary and intentional relinquishment of a known right." *Charter Oak Fire Ins. Co. v. B.J. Enters. of Miss., LLC*, 156 So. 3d 357, 361 (Miss. Ct. App. 2014). Chevron clearly has waived the right to object to joinder due to its conduct: its substantive, extensive, voluntary, and unqualified participation in the matter. Indeed, by its conduct, Chevron unequivocally participated as if it was a party yet now attempts to resist its designation as a party.

15

court erred by failing to join Chevron as a party to the litigation. We therefore reverse the trial court on this issue.

## CONCLUSION

¶22.    The trial court erred when it determined that the PGSD and the City lacked standing because Section 11-51-77 does not authorize them to sue. A party need not be authorized by a specific statute to have standing, if that party has a colorable interest in the subject matter of the litigation or experiences an adverse effect from the conduct of the defendant. The PGSD and the City certainly experienced an adverse effect different from the general public from the Board's conduct. Thus, we reverse the trial court's decision to grant the motion to dismiss for lack of standing and remand the case for further proceedings.

---

The dissent to this section attempts to equate PGSD's failure to object to Chevron's participation, and its reasonable statements allowing Chevron to be heard before the trial court (a result of Chevron's affirmative actions acting as if it was a party), as if it is equal to Chevron's numerous affirmative actions participating as if it was a party to the litigation. Our waiver jurisprudence does not treat a failure to object as stringently as it does affirmative action. For example, a criminal defendant who fails to object to evidence introduced by the State may still have the issue reviewed on appeal for plain error. *Lafayette v. State*, 90 So. 3d 1215, 1218 (Miss. 2012). However, a criminal defendant who affirmatively introduces evidence himself may not then complain on appeal that he introduced that evidence. *Fleming v. State*, 604 So. 2d 280, 289 (Miss. 1992) ("It is axiomatic that a defendant cannot complain on appeal concerning evidence that he himself brought out at trial."). PGSD's failure to object and attempt to be reasonable in a lengthy litigation is simply not the equivalent of Chevron's multiple, pervasive affirmative actions acting as a party over a course of years.

Moreover, the dissent notes that PGSD argued that it was not *required under statutory law* to give Chevron notice of *its original challenge to the Board of Supervisors* and somehow conflates this to the PGSD admitting that Chevron *should not* be joined under any circumstances. Such is simply not the case.

16

¶23. We affirm the trial court's decision to grant the Board a jury trial, pursuant to *Riverboat*.[10]

¶24. The trial court erred in denying the motion to join Chevron as a party. This Court reverses this decision of the trial court and remands for further proceedings consistent with this opinion.

¶25. **AFFIRMED IN PART; REVERSED IN PART AND REMANDED.**

    **WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., KITCHENS AND MAXWELL, JJ., CONCUR. COLEMAN, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY LAMAR AND BEAM, JJ.; MAXWELL, J., JOINS IN PART.**

    **COLEMAN, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶26. While I concur with the majority's analysis of the first two issues, I respectfully dissent from its amorphous analyses of the issue of joinder. The majority holds that the trial judge abused his discretion in denying the motion to join Chevron but does not agree on a reason. Some members of the majority – we do not know which ones or how many – believe Chevron waived its right to object to joinder by its voluntary participation in the case. No legal basis – statutory, caselaw, or procedural rule – exists to support the majority's premise that Chevron's participation waived its right to object to its joinder. More troubling, the general law of waiver upon which some in the majority rely applies just as much – if not more so – to the school district than to Chevron. The school district sat by for months allowing Chevron to participate as a nonparty in the litigation and did not request joinder

---

[10]*Riverboat Corp. of Miss. v. Harrison Cty. Bd. of Supervisors*, 198 So. 3d 289 (Miss. 2016).

until the end. Indeed, as more fully set forth below, during a hearing in front of the trial judge early in the litigation, the school district expressly disavowed the need for Chevron to be a party.

¶27. Today, the Court acts in a wholly arbitrary fashion by choosing to apply the waiver doctrine to one party when the doctrine is equally – or even more – applicable to the other. We act on a whim.

¶28. Other members of the majority – again, we do not know how many or which ones – believe the trial court abused its discretion in refusing to join Chevron as a compulsory party claiming an interest under Rule 20(a)(2). The majority does so despite the fact that Chevron opposes joinder and despite the fact that the party at risk of double litigation – the county – told the trial judge that it took no position on whether Chevron should be joined.

¶29. I would hold that the trial court did not abuse its discretion in denying the joinder of Chevron under Rule 19 or Rule 20 of the Mississippi Rules of Civil Procedure.

¶30. Our standard of review for joinder issues is abuse of discretion. *Illinois Cent. R.R. Co. v. Gregory*, 912 So. 2d 829, 833 (¶ 5) (Miss. 2005). "Abuse of discretion is the most deferential standard of review appellate courts employ." *Ashmore v. Miss. Auth. on Educ. Television*, 148 So. 3d 977, 982 (Miss. 2014). The abuse of discretion standard mandates that we "must affirm the decision, regardless of what any of us individually might have ruled had we been the judge, unless there is a definite and firm conviction that the court below committed clear error." *Ferguson v. Univ. of Miss. Med. Ctr.*, 179 So. 3d 1060, 1064 (Miss. 2015) (internal citations omitted). In light of the history of the case and arguments presented

18

to the trial judge at the hearing on the joinder motion, discussed more fully below, I cannot reach the conclusion that the trial judge abused his discretion in denying the school district's motion to join Chevron in the appeal being pursued by the school district.

¶31.    Rule 19(a) provides for compulsory joinder of a party if:

> (1) in his absence complete relief cannot be accorded among those already parties, or
>
> (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest.

M.R.C.P. 19(a).[11]   Additionally, the Advisory Committee's note to Rule 19 provides four main questions to consider: 1) "the plaintiff's interest in having a forum"; 2) "the defendant's wish to avoid multiple litigation, inconsistent relief, or sole responsibility for a liability shared with another"; 3) "the interest of an outsider whom it would have been desirable to join"; and 4) "the interest of the courts and the public in complete, consistent, and efficient settlement of controversies."

¶32.    Chevron is not an indispensable party under either prong of Rule 19(a). "[J]oinder of parties is only necessary if complete relief cannot be accorded among those who are already parties to the suit."  *Craft v. Craft*, 825 So. 2d 605, 610 (¶20) (Miss. 2002).  Under Rule 19(a)(1), the parties involved can receive complete relief without Chevron's participation in

---

[11] It is difficult to gather from the record and briefs whether the school district is attempting to join Chevron as a defendant or as an involuntary plaintiff who also is involuntarily challenging the methodology.

the suit. Chevron is not involved with and has no say in determining the process by which its tax assessor evaluates the property or the appropriate methodology for assessing the taxes. Chevron's absence would not prevent either party from obtaining complete relief regarding the proper methodology to evaluate the tax assessment.

¶33. Neither does Rule 19(a)(2), upon which some of the members of the majority rely, provide relief for the school district. First, though Chevron may have an interest in the correct methodology being used to assess the taxes it will pay, the school district has not articulated how Chevron's absence would impede Chevron's ability to protect its interest. Additionally, the school district has not explained how it would be subject to multiple obligations were Chevron not a party to the lawsuit. "It is the duty of counsel to make more than an assertion; they should state reasons for their propositions, and cite authorities in their support." *Williams v. State*, 708 So. 2d 1358 (Miss. 1998). Also of note, Rule 19(a)(2) contemplates that the party to be joined "claims an interest relating to the subject matter" of the litigation, and – although Chevron is not a party to the appeal – the record clearly demonstrates that Chevron denied any interest in joinder.

¶34. The hearing on the school district's motion to join Chevron took place on June 11, 2014. Present were attorneys for the school district, an attorney for Chevron, an attorney for the City of Pascagoula, and an attorney for Jackson County. As an initial matter, Jackson County, which would be the party at risk of double litigation should Chevron not be joined, took no position on the issue of joinder. Counsel for Jackson County stated, ". . . you may notice we did not file anything on this particular issue. So we are basically here to see what

20

the Court decides." It is worthy of note that, despite the possible threat of double litigation, the entity so-threatened did not argue for joinder before the trial court.

¶35.    Furthermore, at the hearing on the motion to join Chevron, the school district contradicted its earlier position regarding the necessity of Chevron's involvement as a party. As the majority opinion notes, the trial court denied two motions filed by Jackson County to dismiss the case, in which the county argued that the school district lacked standing. The parties argued the first motion to dismiss for lack of standing on March 16, 2012. In short, Jackson County argued that the right to bring the claims at issue belonged to Chevron, and not to the school district. The school district responded and argued to the trial court that it had a colorable interest and could proceed as a party challenging the tax assessment to Chevron without the involvement of Chevron. An attorney for Chevron appeared at and participated in the hearing on Jackson County's second motion to dismiss, held on May 6, 2013. After counsel for Chevron addressed the Court, the attorney for the school district noted his presence and noted that Chevron had not interpleaded or otherwise joined as a party, but he did not object or ask the Court to exclude Chevron absent joinder. Later, counsel for the school district argued that the school district had standing to contest the tax appropriate to Chevron whether Chevron had notice or not and whether Chevron participated or not. Counsel for the City of Pascagoula, when given his turn to argue to the trial court, pointed out the unlikelihood of Chevron joining in litigation and contesting a tax assessment that "cuts their payments in half." Both the school district and the city argued that Chevron need not even be notified of the action. When the Court later heard arguments on the motion

21

to join Chevron, counsel for Chevron reminded the Court that the school district and the city had taken the position that the taxpayer need not be involved.

¶36.   In addition, neither the majority nor the school district identifies the type of party Chevron would be if joined.  The school district and the city, which are in the position of plaintiffs in the appeal of the county's tax assessment below, wish to increase Chevron's tax burden, so it would not make sense for Chevron to be joined as a compulsory plaintiff.

> From our reading of the relevant authorities, we believe that this is not a proper case for joinder of the absent party as a Rule 19(a) "involuntary plaintiff."  The "proper case" is meant to cover only those instances where the absent party has either a duty to allow the plaintiff to use his name in the action or some sort of an obligation to join plaintiff in the action.

*Eikel v. States Marine Lines, Inc.,* 473 F.2d 959, 962 (5th Cir. 1973).  Chevron has no role in assessing the taxes levied by the county.  Accordingly, no relief sought by the school district or city could be ordered against Chevron, which makes it unnecessary as a defendant.

¶37.   Neither party that would be affected by duplicative litigation, Chevron or Jackson County, asked the trial court below to join Chevron as a party.  Neither the school district nor the majority has shown that the school district will not be afforded complete relief absent Chevron's joinder.  In light of the above-described procedural history and the fact that Jackson County did not, when given clear opportunity to do so, join in the request to join Chevron as a party, the trial judge did not abuse his discretion in refusing to join Chevron.

¶38.   Rule 20 provides for permissive joinder as follows

> All persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences, and if any question of law or fact common to all these persons will arise in the action. All

22

persons may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences, and if any question of law or fact common to all defendants will arise in the action. A plaintiff or defendant need not be interested in obtaining or defending against all the relief demanded. Judgment may be given for one or more of the plaintiffs according to their respective rights to relief, and against one or more defendants according to their respective liabilities.

M.R.C.P. 20(a). "Rule 20 gives trial courts broad discretion in determining when and how to try claims." *Hegwood v. Williamson*, 949 So. 2d 728, 730 (¶5) (Miss. 2007) (citing *Wyeth-Ayerst Labs. v. Caldwell*, 905 So. 2d 1205, 1207 (¶6) (Miss. 2005)). Notwithstanding its prior participation, Chevron strongly expresses an interest in not being joined, has not filed a motion to be joined, and has not initiated a separate right to relief to be considered under Rule 20. Thus, the permissive language in Rule 20 appears to offer the school district no relief. Again, the issue in the present case is whether the tax assessor used the proper methodology in valuing the taxes owed. Chevron has no involvement in determining the methodology for the assessment; therefore, it is difficult to understand and certainly was not explained by the school district, what relief Chevron would offer by being joined as a party. Similarly to the lack of Rule 19 analysis, the school district's brief does not contain any application of Rule 20 to the facts of the present case or cite to any relevant authority; therefore, I decline to analyze the issue further. *See Grey v. Grey*, 638 So. 2d 488, 491 (Miss. 1994); *Williams v. State*, 708 So. 2d 1358 (Miss. 1998).

¶39. In coming to the conclusion that Chevron should not be joined, the trial court reviewed the relevant documents and heard argument from Chevron and the school district

23

and the City. Based on my review of the record, I cannot hold that the trial court abused its discretion in denying the joinder of Chevron.

¶40. Finally, the majority does a disservice to the parties and the members of the bench and bar by issuing a majority opinion in its present form. The majority reaches an agreement on a result but not on the law governing the result. It may do so. *See White's Lumber Supply Co. v. Collins*, 186 Miss. 659, 191 So. 105, 106 (1939). However, five justices in the instant case voted with the majority. One reading our opinions will not know how many justices agree in whole or in part with either of the two rationales advanced by the majority. I am unable to discern any reason to withhold the votes from the parties or from those who may seek to cite the opinion in the future. Certainly, no reader of the majority opinion should consider either the grounds of waiver or the Rule 19(a)(2) rationale to be the law in Mississippi and seek to apply one or both as binding authority to any future, similar case, as apparently neither received a majority vote of the Court. In any event, the purposes of issuing opinions to the public would be better served if the majority were to issue separate, plurality opinions on the issue of joinder. *See White's Lumber Supply Co.*, 191 So. at 106.

**LAMAR AND BEAM, JJ., JOIN THIS OPINION. MAXWELL, J., JOINS THIS OPINION IN PART.**