# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2020-CA-00702-SCT

*IN THE MATTER OF THE ESTATE OF FRANKIE DON WARE, DECEASED: CAROLYN WARE, AS EXECUTRIX OF THE ESTATE OF DON WARE, DECEASED; CAROLYN WARE, INDIVIDUALLY AS SHAREHOLDER, DIRECTOR AND OFFICER OF WARE MILLING, INC., CHICKASAW FARM SERVICES, INC., CHICKASAW GRAIN TRANSPORTATION, INC., AND WARE CONSTRUCTION, INC.; DANA CAROL WARE AND ANGELA WARE MOHR, INDIVIDUALLY AND AS TRUSTEES OF THE FRANKIE WARE FAMILY TRUST AND MARITAL TRUST*

*v.*

*RICHARD WARE, MELISA WARE, LEGACY CAPITAL, A FOREIGN LIMITED LIABILITY COMPANY, CHARLES D. "CHIP" PORTER, DEREK HENDERSON, RECEIVER OF WARE MILLING, INC., CHICKASAW FARM SERVICES, INC., CHICKASAW GRAIN TRANSPORTATION, INC., AND WARE CONSTRUCTION, INC., AND RICHARD DON WARE, INDIVIDUALLY, AS AN OFFICER AND SHAREHOLDER OF WARE MILLING, INC., CHICKASAW GRAIN TRANSPORTATION, INC., CHICKASAW FARM SERVICES, INC., AND WARE CONSTRUCTION, INC., AS BENEFICIARY OF THE ESTATE OF FRANKIE DON WARE, AND AS TRUSTEE OF FRANKIE DON WARE FAMILY TRUST, AND MELISA WARE, INDIVIDUALLY, AND AS OFFICER AND SHAREHOLDER V. CAROLYN WARE AND THE RECEIVER OF WARE MILLING, INC., CHICKASAW FARM SERVICES, INC., CHICKASAW GRAIN TRANSPORTATION, INC., AND WARE CONSTRUCTION, INC.*

DATE OF JUDGMENT:             01/15/2020
TRIAL JUDGE:                 HON. JOSEPH N. STUDDARD
TRIAL COURT ATTORNEYS:   CASEY LANGSTON LOTT

| | |
|---|---|
| DATE OF JUDGMENT: | 01/15/2020 |
| TRIAL JUDGE: | HON. JOSEPH N. STUDDARD |
| TRIAL COURT ATTORNEYS: | CASEY LANGSTON LOTT |
| | SAMUEL DAVID KNIGHT |
| | J. CAL MAYO, JR. |
| | DEREK ANDREW HENDERSON |
| | STEVEN MICHAEL BROM |
| | RHETT R. RUSSELL |
| | REX F. SANDERSON |
| | KEITH CURTIS KANTACK |
| | THOMAS A. WICKER |
| | OLIVIA SPENCER |
| COURT FROM WHICH APPEALED: | CHICKASAW COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANTS: | RHETT R. RUSSELL |
| | KEITH CURTIS KANTACK |
| | REX F. SANDERSON |
| ATTORNEYS FOR APPELLEES: | J. CAL MAYO, JR. |
| | CASEY LANGSTON LOTT |
| | DEREK ANDREW HENDERSON |
| | DUSTIN COLT CHILDERS |
| NATURE OF THE CASE: | CIVIL - WILLS, TRUSTS, AND ESTATES |
| DISPOSITION: | ON DIRECT APPEAL: AFFIRMED IN PART, REVERSED IN PART, AND REMANDED. ON CROSS-APPEAL: AFFIRMED IN PART; DISMISSED AS MOOT IN PART - 05/26/2022 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**CONSOLIDATED WITH**

**NO. 2020-CA-00706-SCT**

*IN THE MATTER OF THE ESTATE OF FRANKIE DON WARE, DECEASED: CAROLYN WARE, EXECUTRIX, CO-TRUSTEE, BENEFICIARY, SHAREHOLDER, OFFICER AND DIRECTOR*

2

*v.*

*RICHARD WARE, MELISA WARE, LEGACY CAPITAL, A FOREIGN LIMITED LIABILITY COMPANY, CHARLES D. PORTER, DEREK HENDERSON, RECEIVER OF WARE MILLING, INC., CHICKASAW FARM SERVICES, INC., CHICKASAW GRAIN TRANSPORTATION, INC., AND WARE CONSTRUCTION, INC., AND DANA CAROL WARE AND ANGELA WARE MOHR V. CHARLES D." CHIP" PORTER, DEREK HENDERSON, RECEIVER OF WARE MILLING, INC., CHICKASAW FARM SERVICES, INC., CHICKASAW GRAIN TRANSPORTATION, INC., AND WARE CONSTRUCTION, INC., AND RICHARD DON WARE AND MELISA WARE V. CAROLYN WARE AND THE RECEIVER OF WARE MILLING, INC., CHICKASAW FARM SERVICES, INC., CHICKASAW GRAIN TRANSPORTATION, INC., AND WARE CONSTRUCTION, INC.*

| | |
|---|---|
| DATE OF JUDGMENT: | 01/15/2020 |
| TRIAL JUDGE: | HON. JOSEPH N. STUDDARD |
| COURT FROM WHICH APPEALED: | CHICKASAW COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANTS: | RHETT R. RUSSELL |
| | KEITH CURTIS KANTACK |
| | REX F. SANDERSON |
| ATTORNEYS FOR APPELLEES: | DEREK ANDREW HENDERSON |
| | J. CAL MAYO |
| | CASEY LANGSTON LOTT |
| | DUSTIN COLT CHILDERS |
| NATURE OF THE CASE: | CIVIL-WILLS, TRUSTS, AND ESTATES |
| DISPOSITION: | ON DIRECT APPEAL: AFFIRMED IN PART, REVERSED IN PART, AND REMANDED. ON CROSS-APPEAL: AFFIRMED IN PART; DISMISSED AS MOOT IN PART - 05/26/2022 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE KING, P.J., CHAMBERLIN AND ISHEE, JJ.**

**KING, PRESIDING JUSTICE, FOR THE COURT:**

¶1. Frankie Ware died in 2011. He was survived by his wife, Carolyn Ware, and their three children, Dana Ware, Angela Ware Mohr, and Richard Ware. Richard is married to Melisa Ware. Carolyn was appointed executor of Frankie's estate. At the time of his death, Frankie owned 25 percent of four different family corporations. Carolyn owned another 25 percent of each, and Richard owned 50 percent of each. Frankie's will placed the majority of Frankie's assets, including his shares in the four family corporations, into two testamentary trusts for which Carolyn, Richard, Angela, and Dana were appointed trustees. The primary beneficiary of both trusts is Carolyn, but one trust allowed potential, limited distributions to Richard, Angela, and Dana. Prolonged litigation between Carolyn and Richard ensued over disagreements regarding how to dispose of Frankie's shares in the four corporations and how to manage the four corporations. Richard eventually filed for dissolution of the four corporations. The trial court ultimately consolidated the estate case with the corporate dissolution case. The trial court denied Angela and Dana's motions to join/intervene in both cases. It also appointed a corporate receiver (Derek Henderson) in the dissolution case by agreed order that also authorized dissolution. The chancery court ultimately ordered that the shares be offered for sale to the corporations, and it approved the

4

dissolution and sale of the corporations. Angela and Dana appeal the trial court's denial of their attempts to join or intervene in the two cases. Carolyn appeals a multitude of issues surrounding the trial court's decisions regarding the corporations and shares. Richard cross-appeals the trial court's net asset value determination date and methodology. The Receiver argues that the trial court's judgment should be affirmed on all issues.

¶2. In the estate case, this Court reverses the chancery court's determination that the estate must offer the shares to the corporation prior to transferring them to the trusts. The corporations filed their breach of contract claim after the expiration of the statute of limitations. This Court affirms the chancery court's denial of Angela and Dana's motions to intervene, and we affirm the chancery court's decision in the dissolution case, but we reverse the judgment to the extent that it allowed the corporations to purchase shares from the estate. This Court further remands the cases to the chancery court for a determination of how to distribute the money from the corporate sales, in which the estate holds 25 percent of the corporate shares.

## FACTS AND PROCEDURAL HISTORY

¶3. Frankie Ware died testate on April 8, 2011. Carolyn petitioned the chancery court to admit Frankie's will to probate. The chancery court granted letters testamentary to Carolyn as executor. It found that the beneficiaries of Frankie's will were Carolyn, "the Frankie Ware Family Trust, and the Frankie Ware Marital Trust." The will appointed Carolyn, Richard, Angela, and Dana as trustees for both trusts. The will left Frankie's tangible property and insurance policies to Carolyn, and provided that the remainder of his assets were to be

5

distributed to the trusts. Among Frankie's assets to be distributed to the trusts were shares amounting to 25 percent ownership in four closely held corporations: Ware Milling, Inc., Chickasaw Grain Transportation, Inc., Chickasaw Farm Services, Inc., and Ware Construction, Inc (collectively, "the Ware Corporations"). The remainder of the shares of the Ware Corporations were owned by Carolyn (25 percent) and Richard (50 percent).

¶4. Carolyn published notice to creditors for three consecutive weeks in August and September 2011. In 2014, Carolyn petitioned to close the estate. Carolyn, Angela, and Dana each filed a consent to closing the estate. Richard filed an objection to closing the estate, arguing that the estate's attempt to transfer shares of three of the Ware Corporations to the trusts violated the corporations' bylaws that required shares to be offered to the corporations for purchase. The bylaws of all four Ware Corporations state that for a "Transfer of Shares,"

> [n]o shareholder shall have the right to sell, assign, pledge, encumber, transfer or otherwise dispose of any of any [sic] of the shares of the corporation without first offering the shares for sale to the corporation at the annually established net asset value of such shares. Such offer shall be in writing, signed by the shareholder. The written offer shall be sent by registered or certified mail to the corporation at its principal executive office, and shall remain open for acceptance by the corporation for a period of 120 days from the date of mailing.

In 2015, after much litigation, the chancery court ordered Carolyn to offer to sell the shares of the three corporations to those corporations. Carolyn appealed, and this Court found that "Richard's objection to the closing of Frankie's estate is, in reality, a shareholder derivative claim." *Ware v. Ware (In re Est. of Ware I)*, 238 So. 3d 613, 618 (Miss. 2018). We noted that "Richard is not seeking individual recovery or individual damages. Rather, he has brought an action to enforce corporate bylaws." *Id.* at 619. We consequently held that

6

Richard lacked standing "because the injury for which he seeks relief, and the gravamen of this matter, pertains to the corporations only." *Id.* at 620.

¶5. In 2017, while the appeal in the original estate case was pending, Richard filed Complaints for Dissolution, initiating separate cases (later consolidated by the chancery court) asking the chancery court to grant corporate dissolution for the four Ware Corporations. On January 30, 2018, by agreed order, the chancery court authorized dissolution and appointed Derek Henderson to act as the Receiver for the Ware Corporations. The order directed the Receiver to oversee the liquidation and dissolution of the four Ware Corporations. The order provided that "[t]he Parties consenting and signing off on this order do not oppose the appointment of a receiver over the Four Corporations and the Company Assets." Carolyn's attorney signed the order. In March 2018, the Receiver sought to appoint Legacy Capital to assist with the sale of Ware Corporations assets. Richard objected to the fee structure, but in April 2018, the parties amended the fee structure, and the trial court granted the Receiver's motion for Legacy Capital to assist with the sales.

¶6. In the estate case, the Receiver filed an objection to closing Frankie's estate on April 20, 2018. The Receiver argued that, based on the bylaws' transfer of shares provision, the shares of the Ware Corporations had to be offered to the corporations prior to being transferred to the trusts. In August 2018, the trial court held that the bylaws applied to Frankie's testamentary transfer and that the estate must offer the shares to the respective corporations. It ordered the closing of the estate conditioned upon the offer of shares and any transfer of sale sums to the estate. Carolyn filed several motions, which the trial court

7

denied. Further, it held that the Receiver should use the date December 31, 2017, to determine the net asset values of the shares as mandated by the bylaws. Chicaksaw Grain Transportation elected to purchase the estate's shares for $386,429.57; Ware Construction opted to purchase the estate's shares for $16.56;[1] Ware Milling opted to purchase the estate's shares for $3,116,270.69. Chickasaw Farm Services elected not to purchase the estate's shares.

¶7.     In November 2018, the trial court ordered that the Ware Corporations be sold. The court approved the process for each company. The public auctions were conducted on December 14, 2018, and Carolyn and Richard were the only bidders. Carolyn was the successful bidder for Chickasaw Farm Services, and Richard was the successful bidder for the other three companies. The trial court approved the auctions and proposed sales of the Ware Corporations' assets. During this process, on December 12, 2018, Angela and Dana moved to intervene or join in both the estate action and the dissolution action. The chancery court denied all of Angela and Dana's motions to that effect. In the dissolution case, it found that Angela and Dana failed to satisfy the requirements for joinder or intervention, and that they had waived any claim to joinder or intervention. In the estate case, it found that their motions were untimely, and that their interests are adequately protected.

¶8.     In May 2019, the chancery court conducted a joint trial for both the estate action and the dissolution action. In the estate action, the trial court found that the Receiver properly

---

[1]Ware Construction had only nominal value.

determined the net asset values for the estate's shares. In the dissolution action, the court again affirmed the auction process and the sale of the Ware Corporations' assets.

¶9.     Angela and Dana appeal the trial court's denial of their motions to intervene and/or join both actions. Carolyn appeals numerous of the trial court's determinations in both actions. Richard appeals the chancery court's determination of December 31, 2017, as the net asset value date and the methodology used to determine the net asset value. The Receiver asserts that the judgments of the chancery court should be affirmed in full.

## ANALYSIS

### A.     Standard of Review

¶10.    This Court will not disturb a chancery court's findings of fact unless the chancery court "abused its discretion, applied an erroneous legal standard, or its findings are manifestly wrong or clearly erroneous." *Flowers v. Boolos (In re Est. of Smith)*, 204 So. 3d 291, 305 (Miss. 2016). This Court reviews questions of law de novo. *Id.* This opinion will elaborate when standards of review regarding specific issues exist. Otherwise, the general standard of review for chancery courts applies.

### B.     Joinder/Intervention

#### 1.     Summary of Arguments

¶11.    Angela and Dana argue that the trial court erred by denying their motions to join or intervene. In the estate case, Angela and Dana argue that, due to their status as trustees of the testamentary trusts created by Frankie's will, the trial court should have allowed them to join as persons necessary for just adjudication under Mississippi Rule of Civil Procedure 19,

9

should have allowed them to join under the permissive joinder standards of Rule 20, and should have allowed them to intervene under Rule 24. In the dissolution case, Angela and Dana limit their argument to intervention under Rule 24. In both cases, they argue that the Receiver took inconsistent positions regarding their necessity as parties in the cases.

### 2. Standard of Review

¶12. This Court reviews issues of joinder under Rules 19 and 20 for abuse of discretion. ***Pascagoula-Gautier Sch. Dist. v. Bd. of Supervisors of Jackson Cnty.***, 212 So. 3d 742, 749 (Miss. 2016). Decisions regarding permissive intervention under Rule 24(b) are also reviewed under an abuse of discretion standard. ***Madison HMA, Inc. v. St. Dominic-Jackson Mem'l Hosp.***, 35 So. 3d 1209, 1215 (Miss. 2010). Decisions regarding intervention as of right under Rule 24(a), however, are reviewed de novo. ***Id.***

### 3. Rule 19 Joinder

¶13. Rule 19(a) of the Mississippi Rules of Civil Procedure provides that a court "shall" join a person as a party if:

> (1) in his absence complete relief cannot be accorded among those already parties, or
>
> (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest.

Miss. R. Civ. P. 19(a). In examining nearly identical rules, other courts have noted the difference between Rule 19 and Rule 24. "The only difference between intervention of right

10

under Rule 24(a)(2) and joinder under Rule 19(a)(2)(i) is which party initiates the addition of a new party to the case." *N.Y. State Ass'n for Retarded Child., Inc. v. Carey*, 438 F. Supp. 440, 445 (E.D.N.Y. 1977). "If an existing party is seeking to bring in an outsider the court should apply the joinder provisions of Rules 19 and 20; if the outsider is seeking to enter the suit of his own accord, the court should apply the intervention provisions set forth in Rule 24." *Hubner v. Schoonmaker*, No. CIV. A. 89-3400, 1990 WL 149207, at *4 (E.D. Pa. Oct. 2, 1990). Thus, because Angela and Dana are outsiders seeking to enter the lawsuits, this Court applies Rule 24, not Rules 19 or 20. Angela and Dana's arguments pursuant to Rule 19 need not be addressed.

4.    *Rule 20 Permissive Joinder*

¶14.    Rule 20 provides that persons may be joined as plaintiffs "if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences, and if any question of law or fact common to all these persons will arise in the action." Miss. R. Civ. P. 20(a). "If an existing party is seeking to bring in an outsider the court should apply the joinder provisions of Rules 19 and 20; if the outsider is seeking to enter the suit of his own accord, the court should apply the intervention provisions set forth in Rule 24." *Hubner*, 1990 WL 149207, at *4. Thus, because Angela and Dana are outsiders seeking to enter the lawsuits, this Court applies Rule 24, not Rules 19 or 20. Angela and Dana's arguments pursuant to Rule 20 need not be addressed.

5.    *Rule 24(a) Intervention of Right*

11

¶15.   Rule 24(a) provides that a person "shall" be allowed to intervene

(1) when a statute confers an unconditional right to intervene; or

(2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Miss. R. Civ. P. 24(a).  Such intervention must be "[u]pon timely application." Miss. R. Civ.

P. 24(a).

¶16.        Rule 24(a)(2) provides that a would be intervenor "*shall*" be allowed to intervene if he meets four prerequisites: (1) he must make timely application, (2) he must have an interest in the subject matter of the action, (3) he must be so situated that disposition of the action may *as a practical matter* impair or impede his ability to protect his interest, and (4) his interest must not already be adequately represented by existing parties. Today's case is our first occasion to construe these requirements.

*Guar. Nat'l Ins. Co. v. Pittman*, 501 So. 2d 377, 381 (Miss. 1987).  To determine whether

an application to intervene is timely, this Court considers

(1)   The length of time during which the would-be intervenor actually knew or reasonably should have known of his interest in the case before he petitioned for leave to intervene;

(2)   The extent of the prejudice that the existing parties to the litigation may suffer as a result of the would-be intervenor's failure to apply for intervention as soon as he actually knew or reasonably should have known of his interest in the case;

(3)   The extent of the prejudice that the would-be intervenor may suffer if his petition for leave to intervene is denied; and,

(4)   The existence of unusual circumstances militating either for or against a determination that the application is timely.

12

***P'ship for a Healthy Miss. v. State (In re Hood ex rel. State Tobacco Litigation)***, 958 So. 2d 790, 806 (Miss. 2007) (quoting ***Stallworth v. Monsanto Co.***, 558 F.2d 257, 264–66 (5th Cir. 1977)). As to the first factor, Angela and Dana knew of Richard's objection in the estate case in 2014, and they knew of the dissolution proceedings in 2017. They did not file to intervene in either case until December 2018. Angela and Dana argue that many issues were still left to be determined as of December 2018, thus their application is timely. Yet, they do not explain why they waited years after knowledge of the issues raised to seek intervention. The lengthy amount of time between Angela's and Dana's knowledge of the cases and their motions to intervene factors against them. As to the second factor, the Receiver points out that the auction and sale had been approved and were to occur a mere two days after the motion was filed. Dana and Angela asked in their motions to intervene that the auction be canceled, that all previous orders of the court that impacted their interests be vacated, and that the estate be immediately closed. Clearly, the parties who had litigated these issues for years and were having issues come to resolution would be severely prejudiced with such an intervention. Angela and Dana do not illuminate the existence of any prejudice to them in not being allowed to intervene. They merely allege that their mother Carolyn is conflicted as executor, trustee, and individual shareholder. They do not explain how any such conflict has negatively impacted Carolyn's performance as a trustee or how they are prejudiced or would do anything differently if allowed to intervene. The chancery court therefore did not err by finding their motion to intervene untimely. Additionally, Carolyn as executor and trustee, as well as the most direct beneficiary of the trusts, adequately represented any

13

interests of Angela and Dana. Carolyn's goal was clearly to maximize the holdings of the estate, and therefore the trusts. The chancery court did not err by denying their motions to intervene.

### 6. Rule 24(b) Permissive Intervention

¶17. Rule 24(b) provides that a trial court may allow a party to intervene "(1) when a statute confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common." Miss. R. Civ. P. 24(b). Such intervention must be "[u]pon timely application[.]" Miss. R. Civ. P. 24(b). For the same reasons that the chancery court did not err by denying intervention as of right, it did not abuse its discretion in denying Angela and Dana's motions for permissive intervention.

## C. Interpretation of the Bylaws

### 1. Summary of the Arguments

¶18. Carolyn argues that two statutes of limitations applicable to enforcing the bylaws against the estate had expired when the Receiver raised this issue. She further argues that the chancery court erred by construing the bylaws as a valid contract because material terms were not definite. She also argues that the bylaw language was not applicable to a testamentary disposition. Additionally, she argues that the Receiver lacked standing to object to the estate's closing. Last, she argues that Richard and the Receiver are barred from raising this issue by various theories of estoppel.

### 2. Standards of Review

14

¶19. Statute of limitations issues are questions of law that this Court reviews de novo. *Lincoln Elec. Co. v. McLemore*, 54 So. 3d 833, 835 (Miss. 2010). This Court likewise reviews issues of contract and contract construction de novo. *Epperson v. SOUTHBank*, 93 So. 3d 10, 16 (Miss. 2012).

> 3. *Statutes of Limitation*

¶20. Frankie died in 2011, Carolyn moved to close the estate in 2014, and the Receiver did not object to the share transfer until 2018.

¶21. Carolyn relies on Mississippi Code Section 15-1-25, which provides that "An action or scire facias may not be brought against any executor or administrator upon any judgment or other cause of action against his testator or intestate, except within four years after the qualification of such executor or administrator." Miss. Code Ann. § 15-1-25 (Rev. 2019). But this statute only applies to causes of action that accrue against the decedent during his lifetime and is therefore inapplicable. *Rogers v. Rosenstock*, 117 Miss. 144, 77 So. 958, 959 (1918).

¶22. Carolyn also relies on Mississippi Code Section 15-1-49, which provides that breach of contract actions "shall be commenced within three (3) years next after the cause of such action accrued, and not after." Miss. Code Ann. § 15-1-49(1) (Rev. 2019). "[B]ylaws operate as a contract between the corporation and its members or between the members inter se . . . ." 18 C.J.S. *Corporations* § 176. The Receiver appears to argue that the alleged contract breach occurred when Carolyn attempted to close the estate without offering the shares for purchase to the corporations, and that he objected reasonably quickly after this

Court remanded the estate case. Richard, and to some extent the Receiver, argue that the statute of limitations has not yet started running because Carolyn has not yet transferred the shares to the trusts, thus no breach of contract has yet occurred. In her reply brief, Carolyn also asserts that the doctrine of laches prevents the corporations from objecting to the closing of the estate at the time they did.

¶23. "Under Section 15-1-49, the three-year statute of limitations begins to run when the cause of action accrues, and we have held that the 'cause of action accrues when it comes into existence as an enforceable claim, that is, when the right to sue becomes vested.'" *Anderson v. LaVere*, 136 So. 3d 404, 411 (Miss. 2014) (footnote omitted) (citation omitted) (quoting *Bullard v. Guardian Life Ins. Co. of Am.*, 941 So. 2d 812, 815 (Miss. 2006)). The question in the case is when the cause of action accrued: when Frankie's will, which purported to transfer the shares to the trusts, was probated; when Carolyn attempted to close the estate without offering the shares to the corporations; or whether the statute of limitations will begin accruing when Carolyn transfers the shares to the trusts without offering them for sale to the corporations.

¶24. In *Ware I*, this Court noted that Richard, who it found to lack standing to object to the closing of the estate on the basis that Carolyn had not offered the shares to the corporations, "has brought an action to enforce corporate bylaws." *In re Est. of Ware I*, 238 So. 3d at 619. "Richard's objection to the closing of Frankie's estate is, in reality, a shareholder derivative claim. Richard was seeking solely to enforce a putative corporate right." *Id.* at 618.

16

¶25. The bylaws state that "[n]o shareholder shall have the right to sell, assign, pledge, encumber, transfer or otherwise dispose of any of any [sic] of the shares of the corporation without first offering the shares for sale to the corporation." "Where the business of a decedent is in a corporate form, the estate of the decedent is the owner of the corporate stock, but not the business itself." *Harper v. Harper*, 491 So. 2d 189, 195 (Miss. 1986). In an unjust enrichment case, which is based on quasi-contract principles, this Court held that the cause of action accrued "when Hughes knew or should have known he would receive neither the lots nor any benefit from the Shipps." *Hughes v. Shipp*, 324 So. 3d 286, 291 (Miss. 2021).

¶26. In dicta, the Nebraska Supreme Court noted, and we find persuasive, that the statute of limitations did not begin to run when the party simply became aware that the executor did not intend to offer any more stock to the corporation for redemption. *Pennfield Oil Co. v. Winstrom*, 720 N.W.2d 886, 901 (Neb. 2006). Instead, the agreement was breached when the executor paid the estate tax and "*attempted* to transfer the stock in the absence of a valid waiver of [the company's] contractual right to redeem the stock." *Id.* (emphasis added). According to the bylaws, the Ware Corporations' stock would not be validly and completely transferred until the corporations themselves issued a new stock certificate and recorded the transfer on the corporate books. Thus, the argument that Carolyn could not breach the agreement until the shares were finally transferred is meritless because the shares could not be finally transferred without action from the corporations.

¶27. In fact, in his original filings with respect to closing the estate, Richard argued that the agreement was breached when the will went into effect, because Frankie had "pledged" the shares to the trusts without offering them to the estate.[2] ("By the clear language of the bylaws, Mr. Frankie Don Ware was not even able to pledge his shares to the trust without first offering those shares back to the corporation."); ("The only appropriate time for that 'first offering' of the shares would have been on the date of Mr. Frankie Don Ware's death."). He further argued that the bylaw provision was prospective, and did not require an actual transfer to be breached, because the breach happened before the transfer. ("This provision in the bylaws is preemptory [sic], not only to a 'transfer' but to a sale, assignment, pledge, encumbrance or any other method of conveyance."). Richard also repeatedly argued that the breach occurred with the petition to close the estate, because the attempt to close the estate was an attempt to transfer the shares to the trusts. ("[A] Petition to Close Estate . . . is attempting to transfer the shares . . . to the trust as assets of the estate."); ("Carolyn Ware petitioned this Court to close the estate of Frankie Don Ware in order to transfer shares of stock owned by the decedent into trusts named in his will."); ("Carolyn Ware attempts to circumvent her conflict by closing the estate and simultaneously disbursing assets to the trust, which is prohibited by the corporate by-laws . . . ."); ("Carolyn Ware has breached her fiduciary duties to the Estate by violating the very corporate by-laws she signed and agreed

---

[2]This Court ruled that Richard was not the proper party as an individual to bring the objection; the right belonged to the corporations, so estoppel does not bind the corporations as separate legal entities to Richard's numerous representations made as an individual. *See Clark v. Neese*, 131 So. 3d 556, 560 (Miss. 2013). But given that he owns the most shares of the corporations and is the president, and that he argued vociferously that he had standing to bring the case for the corporations, it is worth noting.

18

to follow . . . ."); ("[T]he language in the bylaws is unambiguous and fatal to Carolyn Ware's ill-fated attempt to illegally transfer the decedent's stock to a trust without first offering it back to the corporations."). He further noted the letter from the estate's lawyer just prior to the petition to close the estate that explained that the closing of the estate would transfer all assets from the estate to the trusts.

¶28. The bylaws state that *prior* to disposition, a shareholder must "first offer" shares to the corporations. It appears Carolyn had done everything in her power to effectuate a transfer of the shares from the estate to the trusts by petitioning to close the estate. In doing so, she clearly did not make a "first offer" of the shares to the corporations prior to her attempted disposition. The bylaws do not require her to sign over the shares to effectuate a transfer, and she likely could not do so under Frankie's name until the court authorized closing the estate. The bylaws required her to "first offer" the shares before disposing of them. Carolyn clearly attempts to dispose of the shares without a "first offer" to the corporations. The logical point of any alleged breach was when Carolyn attempted to transfer the shares to the trusts without having first offered them to the corporations by attempting to close the estate. This alleged breach occurred in 2014, and the corporations did not object until 2018. The three-year statute of limitations bars the corporations' contractual claims against the estate. This Court therefore reverses the chancery court's finding that the estate was required to offer the shares for sale to the corporations prior to closing the estate. This Court need not address Carolyn's remaining arguments regarding the transfer of the estate's shares.

19

**D.     Validity of the Order Dissolving Corporations and Appointing Receiver**

*1.     Summary of the Arguments*

¶29.   Carolyn argues that the chancery court erred by issuing its January 30, 2018, order dissolving the Ware Corporations and appointing a receiver. She argues that such error invalidates essentially the entire dissolution proceedings in the dissolution case. Carolyn argues that the order is void because the chancery court lacked subject matter jurisdiction. She maintains that Richard's complaints were unsworn and failed to follow statutory notice requirements. She asserts that the statutory standards for dissolution and appointing a receiver were not met. And she argues that the chancery court should have fashioned equitable remedies in lieu of dissolution. Richard and the Receiver argue that Carolyn stipulated to this order, and that the chancery court had subject matter jurisdiction to issue it.

*2.     Validity of Order*

¶30.   A chancery court may dissolve a corporation upon a proceeding by a shareholder if certain statutory standards are met. Miss. Code Ann. § 79-4-14.30(a)(2) (Rev. 2013). In a proceeding to dissolve brought by a shareholder, the corporation "shall," within ten days of the commencement of the proceeding, send all shareholders "a notice stating that the shareholders are entitled to avoid the dissolution of the corporation by electing to purchase the petitioner's shares . . . ." Miss. Code Ann. § 79-4-14.31(d) (Rev. 2013). Carolyn argues that the chancery court never found that the statutory standards were met and that she never received the required notice that she may elect to purchase shares, thus the order is void.

¶31. Yet, the order authorizing dissolution and appointing the Receiver was a consent decree. The order stated that "[t]he Parties stipulate and agree and the Court hereby makes the following findings[.]" It further states that "[t]he Parties consenting and signing off on this Order do not oppose the appointment of a receiver over the Four Corporations and the Company Assets." Below the chancellor's signature, the order states, "Agreed and approved for entry" and below that statement, attorney Sam David Knight signed the order on behalf of Carolyn.

¶32. "[C]onsent agreements are not ordinarily subject to appellate review." *Rushing v. Rushing*, 724 So. 2d 911, 915 (Miss. 1998). However, consent decrees may be attacked for the reasons enumerated in Mississippi Rule of Civil Procedure 60(b). *Id.* at 915-16. Thus, a party may attempt to find relief from a consent decree for reasons including fraud, mistake, misconduct, or duress, among other reasons. *Id.*; Miss. R. Civ. P. 60(b). Carolyn alleges no such reason in attacking the consent order. She further charges the chancery court with failing to find that the statutory standards for dissolution were met. But because she consented to dissolution, the chancery court was not required so to do. When a party concedes an issue in a consent order, the chancery court is "not required to issue specific findings of fact nor [is it] required to determine the issue . . . ." *Rushing*, 724 So. 2d at 916-17.

¶33. Carolyn attempts to argue that she as Executrix, as opposed to as a shareholder individually, never consented to the order. She asserts that the attorney who signed the order on her behalf did not enter an appearance in the probate matter until June 2018, several

months after the January 2018 dissolution order. This argument is without merit. The dissolution complaint named Carolyn as a defendant both individually and in her capacity as Executrix. In July 2017, Knight filed answers in the dissolution cases on behalf of Carolyn. Those Answers specifically were filed on behalf of Carolyn by Knight "individually and in her capacity as Executrix of the Estate of Frankie Don Ware." Knight need not have entered an appearance in the probate case to represent Carolyn as Executrix in a separate corporate dissolution proceeding.

¶34. Carolyn also argues that the court had no authority to appoint the Receiver, and alternatively, that it appointed a receiver without a request to do so and without proper notice to the parties among other alleged procedural deficiencies. First, Carolyn explicitly agreed to the appointment in the consent order, thus rendering this argument waived. Second, this argument is patently without merit.

> A court in a proceeding brought to dissolve a corporation may issue injunctions, appoint a receiver or custodian pendente lite with all powers and duties the court directs, take other action required to preserve the corporate assets wherever located, and carry on the business of the corporation until a full hearing can be held.

Miss. Code Ann. § 79-4-14.31(c) (Rev. 2013). Furthermore, "a court in a judicial proceeding brought to dissolve a corporation may appoint one or more receivers to wind up and liquidate . . . the business and affairs of the corporation." Miss. Code Ann. § 79-4-14.32(a) (Rev. 2013).

> The court shall describe the powers and duties of the receiver or custodian in its appointing order, which may be amended from time to time. Among other powers:

> (1) The receiver (i) may dispose of all or any part of the assets of the corporation wherever located, at a public or private sale, if authorized by the court; and (ii) may sue and defend in his own name as receiver of the corporation in all courts of this state[.]

Miss. Code Ann. § 79-4-14.32(c)(1) (Rev. 2013). The chancery court clearly had the statutory authority to appoint a receiver in this corporate dissolution action.

¶35. Moreover, Carolyn fails to explain why the alleged unsworn nature of Richard's dissolution complaint has any bearing on the validity of the court's order or jurisdiction. Mississippi does not require that pleadings be sworn by the parties. *See* Miss. R. Civ. P. 8; Miss. R. Civ. P. 11(a). Richard's complaint was signed by his attorney, as required by Mississippi Rule of Civil Procedure 11. Miss. R. Civ. P. 11(a). Carolyn's subject matter jurisdiction arguments are equally vague. The statutes clearly give the chancery court jurisdiction over dissolution proceedings filed by shareholders, which is what occurred here.

¶36. The arguments that the order is void and that the court lacked subject matter jurisdiction are consequently without merit.

### 4. Equitable Remedies

¶37. The statutes recognize that the chancery court has inherent equity powers to fashion alternative remedies to judicial dissolution. Miss. Code Ann. § 79-4-14.34(i) (Rev. 2013). Carolyn argues that the trial court erred by not using its equitable powers to fashion remedies other than dissolution for the Ware Corporations. But Carolyn consented to the order authorizing dissolution, without advocating for alternative remedies; indeed, she consented to the order without qualification. This issue is therefore without merit.

**E.      Jurisdiction Over Probate Assets**

¶38.    Carolyn argues that the chancery court in the dissolution case improperly exercised jurisdiction over probate assets that properly belonged only to the probate court.  She argues that the court in the dissolution proceeding allowed "the Receiver to remove from the probate proceeding and from the exclusive administration of the Executrix probate assets being shares of stock held by the decedent . . . and . . . caused the underlying corporate assets to be sold."

> The court in which a will may have been admitted to probate, letters of administration granted, or a guardian may have been appointed, shall have jurisdiction to hear and determine all questions in relation to the execution of the trust of the executor, administrator, guardian, or other officer appointed for the administration and management of the estate, and all demands against it by heirs at law, distributees, devisees, legatees, wards, creditors, or others; and shall have jurisdiction of all cases in which bonds or other obligations shall have been executed in any proceeding in relation to the estate, or other proceedings, had in said chancery court, to hear and determine upon proper proceedings and evidence, the liability of the obligors in such bond or obligation, whether as principal or surety, and by decree and process to enforce such liability.

Miss. Code Ann. § 9-5-83 (Rev. 2019).  "Subject matter jurisdiction turns on the type of case at issue[.]"  *Riley v. Moreland*, 537 So. 2d 1348, 1351 (Miss. 1989).  Thus, whether the probate court has exclusive jurisdiction hinges on whether the case is the type contemplated by the statute.  *Id.*  The legislature gave the chancery court the power to hear judicial dissolution cases, which this is.  Miss. Code Ann. § 79-4-14.31 (Rev. 2013).  Simply because the dissolution tangentially impacts some estate assets does not make it a case that must fall under the purview of the estate case.  It is not a demand against the estate, as contemplated by the probate statute.

24

¶39. Additionally, Carolyn's argument misrepresents what occurred in the dissolution case. The chancery court did not authorize the Receiver to remove probate assets from the estate. It authorized the Receiver to preserve corporate assets. In doing so, the Receiver, similar to any claimant against the estate, objected to the closing of the estate, arguing that the corporate shares should be offered to the corporations prior to being transferred to the trusts. In the estate case, not the dissolution case, the chancery court agreed with the Receiver's objection and ordered that the shares be offered to the corporations prior to being distributed to the trusts. Ultimately, the corporations, not the Receiver, would decide whether to purchase the shares from the estate. Moreover, whether the charge of "causing the underlying corporate assets to be sold" is correct is of no consequence. "[When] the business of a decedent is in a corporate form, the estate of the decedent is the owner of the corporate stock, but not of the business itself." *Harper*, 491 So. 2d at 195. Thus, the underlying corporate assets were not estate assets. This argument is without merit.

## F.     Failure to Replace the Board of Directors

¶40. After the chancery court ordered the sale of the Ware Corporations, Carolyn filed a Petition to Judicially Remove and Replace Members of Board of Directors and Officers and Motion to Dismiss. In her appellate brief, Carolyn alleges that the court ordered that all decisions related to the public sale of corporate assets were to be determined by the board of directors. The chancery court denied her motion, finding it was not relevant to the dissolution case. It noted that such a petition was relevant to another entirely separate case that Carolyn had brought against Richard regarding corporate mismanagement.

25

¶41. A chancery court "may remove a director of the corporation from office in a proceeding commenced either by the corporation or by its shareholders holding at least ten percent (10%) of the outstanding shares of any class if the court finds that (1) the director engaged in fraudulent or dishonest conduct, or gross abuse of discretion, with respect to the corporation, and (2) removal is in the best interest of the corporation." Miss. Code Ann. § 79-4-8.09(a) (Rev. 2013). Carolyn argues that Richard is generally guilty of various corporate malfeasances. But, pursuant to the November 2018 order, the Receiver and the court had ultimate authority over the processes and results of the sale. The trial court did not err by denying Carolyn's motion to remove the directors, as the motion is not relevant to the dissolution case.

## G.    Payment of Dividends

¶42. Carolyn argues that the chancery court erred by issuing its Order Authorizing Payment of Dividends. Carolyn agreed to this order without qualification. Carolyn now appears to argue that she did not agree to the order *as Executor*. For the same reasons as detailed above regarding the consent order authorizing dissolution, Carolyn's argument fails. This argument is without merit.

## H.    Payments to Receiver and Law Firms

¶43. Carolyn objects to the payments paid to the Receiver, as well as to law firms hired by the Receiver. The Receiver points out that Carolyn agreed to the order that created the Receiver's fees, and did not object to the orders allowing him to obtain legal counsel. Nor did she object to any of the fee submissions before the chancery court. "[T]he failure to

26

make a proper objection waives any claim of error on appeal . . . ." ***Nichols v. Munn***, 565 So. 2d 1132, 1136–37 (Miss. 1990). This issue is therefore waived.

## I. Accumulated Earnings as Probate Assets

¶44. Carolyn argues that the chancery court erred by denying her request as Executor that one-fourth of all accumulated earnings of each corporation be declared probate assets pursuant to the laws and regulations governing Subchapter S corporations. The Receiver argues that Carolyn confuses earnings with cash distributions. Richard argues that Carolyn received the proper amount and that the issue is moot. Carolyn, the Receiver, and Richard all cite accounting testimony in this case, but none cite even the most basic law or regulation governing any such assets, earnings, or distributions. Carolyn does not even cite the record regarding what request she is referring to that the chancery court allegedly denied. But the chancery court did appear to order dividends that may belong to the estate to be paid into a court escrow account until the matters at hand were resolved. Because it is unclear what decision Carolyn purports to find in error, and because Carolyn fails to cite any authority for her argument, this Court exercises its discretion to decline to address this issue.

## J. Legacy Capital Appointment

¶45. Carolyn argues that the chancery court erred by approving the Receiver's request to hire Legacy Capital to assist the Receiver with the sale of company assets. The Receiver argues that Carolyn failed to object to the retention to the chancery court at the time the Receiver sought Legacy's appointment, and that she has thus waived this argument. "[T]he

failure to make a proper objection waives any claim of error on appeal . . . ." ***Nichols***, 565 So. 2d at 1136–37.

¶46.  This argument is further without merit.  Carolyn argues that the appointment of Legacy was improper because it was not licensed to do business in Mississippi, because it was not a licensed real estate agent, and because it was not a licensed auctioneer.  While Carolyn's argument is unclear, she seems to argue that Legacy should return the money it was paid, not that its appointment somehow voids the dissolution.  First, "[t]he failure of a foreign limited liability company to register in this state does not . . . [i]mpair the validity of any contract or act of the foreign limited liability company."  Miss. Code Ann. § 79-29-1013(2)(a) (Rev. 2013).  The Receiver also notes that Legacy was appointed by the chancery court to assist the Receiver, but that the Receiver and chancery court had ultimate authority over the sale; thus, Legacy did not engage in a real estate transaction, nor did it act as an auctioneer.  It merely assisted the Receiver in effectuating the sale and auction.  Moreover, the laws regarding real estate brokers do not apply to "[t]he acts of any person while acting as a receiver . . . or under court order . . . ."  Miss. Code Ann. § 73-35-3(8)(c) (Rev. 2017).  The laws regarding auctioneer licensing likewise exempt "[a] sale conducted by an individual acting as a receiver . . . or any such person acting under order of court . . . ."  Miss. Code Ann. § 73-4-5(2)(e) (Rev. 2017).

¶47.  Carolyn argues for the first time in her reply brief that the Receiver committed perjury with regard to his opinions about sale options and Legacy.  This Court does not generally consider arguments raised for the first time in a reply brief.  ***Sanders v. State***, 678 So. 2d 663,

669-70 (Miss. 1996). Regardless, Carolyn cites the record for the Receiver's alleged lies and misstatements, most of which are opinion, but she fails to point this Court to any evidence that would indicate that the Receiver indeed did lie or misstate anything. Her broad allegations without supporting evidence are without merit.

¶48. Within this argument, Carolyn also appears to argue that the chancery court should have submitted some ambiguous dispute with Legacy to arbitration, although it is unclear what she wants submitted. The contract between the Receiver and Legacy contained an arbitration provision. Carolyn states, without record citation, that "[a]rbitration was pled as an affirmative defense." Carolyn does not explain to what arbitration was pled as an affirmative defense. The Receiver does not address this argument. Richard claims that Carolyn raises this for the first time on appeal, and he points out that no dispute exists between Legacy and the Receiver, that Carolyn was not a party to that contract, and that Legacy is not a party to the dissolution proceedings. This issue is therefore without merit.

**K. Subpoenas and Payment to Legacy Capital**

¶49. Carolyn served two subpoenas duces tecum on Legacy by serving its in-state registered agent. The chancery court quashed these subpoenas. It noted that Legacy had already testified and given information. In any event, Legacy was a nonparty and is an out-of-state entity; therefore, service of a subpoena on its registered agent does not comply with service requirements for a subpoena. "[A] Mississippi court cannot subpoena a nonresident nonparty to appear and/or produce in Mississippi documents which are located outside the State of Mississippi, even if that nonresident nonparty is subject in another context to the

29

personal jurisdiction of the court." *Syngenta Crop Prot., Inc. v. Monsanto Co.*, 908 So. 2d 121, 129 (Miss. 2005). A party must look to the appropriate out-of-state forum to request it issue a subpoena to the nonparty that resides in its forum. *Id.* at 128. This issue is therefore without merit.

## L. Receiver's Duties

¶50. Carolyn argues that the chancery court erred by failing to require the Receiver to comply with its orders, by failing to require the Receiver to comply with inventory and accounting requirements, by failing to require the Receiver to act as a fiduciary, and by failing to remove the Receiver. Carolyn focuses her fiduciary argument on her allegations that the Receiver caused expensive adversary litigation to continue, which she argues was not in keeping with his fiduciary duties to the companies and shareholders. The Receiver argues that he has complied with all inventory and reporting obligations, and that he will comply with the chancery court's instructions regarding a final accounting.

¶51. Carolyn cites Mississippi Code Section 11-5-161, which merely states that Receivers shall be subject to orders of the court. Miss. Code Ann. § 11-5-161 (Rev. 2019). She otherwise cites no authority for any of her propositions. This Court exercises its discretion to decline to address this issue.

¶52. Moreover, this issue is without merit. The January 2018 order requires the receiver to file monthly financial reports, quarterly progress reports, and only a final accounting. Carolyn admits that the Receiver filed monthly reports. Carolyn merely summarily alleges that his reports did not fulfill "accounting requirements." Carolyn then focuses much of her

brief on the fact that the chancery court quashed a subpoena she issued to the Receiver without clearly explaining why this was error.

**M.    Auction Valuation Date of December 31, 2017**

¶53.    Carolyn argues that the Receiver and trial court erred by valuing the corporations for auction as of December 31, 2017. Carolyn does not give any reason for this date being error except for some base assertions that the appraiser did not know what tangible assets the companies had on site on December 31, 2017. This issue is therefore waived.

**N.    Cross-Appeal**

¶54.    Richard cross-appeals, arguing that the net asset valuation date and methodology were incorrect and resulted in a windfall to the estate. He also argues that the trial court erred by allowing dividends paid to the estate in 2018.

*1.    Net Asset Valuation Date of December 31, 2017*

¶55.    Richard argues that the use of December 31, 2017, to value the estate's shares is arbitrary and inequitable, and allows the estate to be unjustly enriched for work done in the corporations after Frankie's death and while the estate held the shares without offering them to the corporations. Because the corporations' claims against the Estate were made outside of the statute of limitations and this Court therefore reverses the determination that the Estate must offer the shares to the corporations, this issue is moot.

*2.    Net Asset Valuation Methodology*

¶56.    Richard argues that "net asset value" equates to "book value" and that the Receiver's method of calculating net asset value inflated the corporations' values above book value.

31

The Receiver argues that the definitions of net asset value differ, and that several methodologies could properly calculate net asset value. He relies on the testimony of his four accounting and valuation experts, as well. Valuation is a factual determination within the sound discretion of the trial court. *See, e.g.*, Miss. Code Ann. 79-4-14.34 (Rev. 2013). Richard has not demonstrated why the chancery court abused its discretion by using the net asset value methodology employed. To the extent this issue impacts the dissolution proceedings, the chancery court's determination is affirmed.

### 3. *Dividends*

¶57. Richard argues that if this Court finds that December 31, 2017, is the proper share valuation date, then the 2018 dividends placed in escrow should not be disbursed to the Estate. Because this Court reverses the finding that the Estate must offer the shares to the corporations, this issue is moot.

## CONCLUSION

¶58. This Court reverses the chancery court's order that the estate must offer the shares to the corporations because the corporations' contract claims were untimely. This Court affirms the chancery court on the intervention issue and the dissolution issues. We remand the case to the chancery court for a determination regarding how to distribute the funds at issue.

¶59. **AS TO NO. 2020-CA-00702-SCT: ON DIRECT APPEAL: AFFIRMED IN PART, REVERSED IN PART, AND REMANDED. ON CROSS-APPEAL: AFFIRMED IN PART; DISMISSED AS MOOT IN PART. AS TO NO. 2020-CA-00706-SCT: ON DIRECT APPEAL: AFFIRMED IN PART, REVERSED IN PART, AND REMANDED. ON CROSS-APPEAL: AFFIRMED IN PART; DISMISSED AS MOOT IN PART.**

32

**KITCHENS, P.J., COLEMAN, MAXWELL, BEAM, CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR. RANDOLPH, C.J., NOT PARTICIPATING.**